## MILLER v. COMMISSIONER OF INTERNAL REVENUE.

### HAWK v. SAME.

### Nos. 6833, 6834.

Circuit Court of Appeals, Sixth Circuit.

June 2, 1936.

416

Homer Hendricks, of Washington, D. C. (Bernard J. Onen, of Battle Creek, Mich., Miller & Chevalier, of Washington, D. C., on the brief), for petitioners.

Frank J. Wideman, Sewall Key, and John MacC. Hudson, all of Washington, D. C., for respondent.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The review here sought is of orders of the Board of Tax Appeals sustaining deficiencies determined by the respondent in the taxes of the petitioners for the year 1928. In that year the petitioner A. L. Miller and Mrs. Hawk's decedent, Henry C. Hawk, then the majority stockholders of the Enquirer-News Company, a newspaper publishing corporation of Battle Creek, Mich., transferred all of their stock in that corporation to Federated Publications, Inc., for a consideration partly in cash and partly in stock of the purchasing company, which at the same time acquired all of the minority stock of the Enquirer-News Company. Concededly gain was derived by the petitioners through the transaction. Whether gain is to be recognized upon the stock exchanged as well as on that sold for cash is the question to be decided, and this in turn depends upon whether the transaction was a sale, or, within the applicable statute, a merger or reorganization.

The taxes here involved are governed by section 112 of the Revenue Act of 1928, 45 Stat. 816 (26 U.S.C.A. § 112 and note). Subsection (a) declares the general rule that upon the sale or exchange of property the entire amount of the gain or loss shall be recognized except as thereinafter provided. By subsection (b) (3) no gain or loss is recognized if stock or securities in a corporation which is a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in another corporation which is a party to the reorganization. Subsection (i) (1), in so far as here applicable, defines the term "reorganization" to mean: "(A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or. * * * "

It is not disputed that Federated Publications, Inc., acquired all of the stock of the Enquirer-News Company, so that the transaction is within the literal wording of the parenthetical clause of subsection (i) (1). But this, says the respondent, is not enough, for every acquisition of a majority of stock of one corporation by another does not constitute reorganization within the purview of the statute. Only those acquisitions satisfy the statute which partake of the nature of a merger or consolidation, but for some reason do not come entirely within the precise definition of those terms. As was said in Pinellas Ice & Coal Storage Co. v. Commissioner, 57 F.(2d) 188, 190 (C.C.A. 5): "In a merger one corporation absorbs the other and remains in existence while the other is dissolved. In a consolidation a new corporation is created and the consolidating corporations are extinguished. In either event, the resulting corporation acquires all the property, rights, and franchises of the dissolved corporations, and their stockholders become its stockholders." See, also, Cortland Specialty Co. v. Commissioner, 60 F.(2d) 937 (C.C.A. 2).

The Pinellas Case involved the purchase by one corporation of the stock of another for money and short-term notes. The court held the transaction there involved in reality a sale for the equivalent of money, and not an exchange of stock for stock or other securities. While the decree was affirmed by

the Supreme Court, 287 U.S. 462, 470, 53 S.Ct. 257, 260, 77 L.Ed. 428, the assumption that, "Giving the matter in parenthesis the most liberal construction, it is only when there is an acquisition of substantially all the property of another corporation in·connection with a merger or consolidation that a reorganization takes place," was expressly repudiated, and the court said: "The words within the parenthesis may not be disregarded. They expand the meaning of 'merger' or 'consolidation' so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to delimit but which in strictness cannot be designated as either merger or consolidation. But the mere purchase for money of the assets of one company by another is beyond the evident purpose of the provision, and has no real semblance to a merger or consolidation. Certainly, we think that to be within the exemption the seller must acquire an interest in the affairs of the purchasing company more definite than that incident to ownership of its short-term purchase-money notes."

Conceding that the statute as interpreted by the Supreme Court enlarged the meaning of the terms "merger" and "consolidation," the respondent still insists that such expansion was not intended as an independent and unrelated definition of such terms for income tax purposes; that Congress merely intended that those transactions only which in substance and practical effect result in merger or consolidation, though accomplished through the acquisition by one corporation of a majority of the stock of another, should be considered for tax purposes as a merger or consolidation, while the mere acquisition by a corporation of a majority of the stock of another when the transaction otherwise bears no resemblance to a merger or consolidation does not satisfy the requirement. It is not sufficient, says the respondent, that the transaction is one embraced by the literal language of the statute; it must also come within its purpose, which plainly contemplates that, after the acquisition by one corporation of the stock of another the interests of the essential owners, the stockholders of the latter will be continued in the new corporate owner. This requirement is not met unless the proportionate interests of the stockholders as a body are maintained. Also there can be neither merger nor consolidation in the true sense nor in the spirit of the statute, unless the properties and franchises of the old corporation are transferred to or are absorbed by the new. When the former continues to conduct its own business as a separate corporation just as it had done theretofore, there is not that continuity of interest on the part of the stockholders which is inherent in the meaning of merger or consolidation as commonly understood. Since the Enquirer-News Company was not dissolved or extinguished, and the proportionate interest of the taxpayers in the business was materially less after the exchange than before, the transaction in its final analysis was nothing more than a sale of the old company to the new, with the purchase of stock in the new company but an incident of such sale.

Since decision by the Board of Tax Appeals, however, and since the main briefs were written, the Supreme Court in a series of five decisions has clarified its interpretation of the statute and amplified the view expressed in the Pinellas Case. John A. Nelson Co. v. Helvering, 296 U.S. 374, 56 S.Ct. 273, 80 L.Ed. 281; Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 272, 80 L. Ed. 284; Helvering v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289; G. & K. Mfg. Co. v. Helvering, 296 U.S. 389, 56 S.Ct. 276, 80 L.Ed. 291; Bus & Transport Securities Corp. v. Helvering, 296 U.S. 391, 56 S. Ct. 277, 80 L.Ed. 292. The opinion in the Minnesota Tea Company Case more or less controls the whole series. There, after quoting the excerpt above recited from the Pinellas Case, the court said: "And we now add that this interest must be definite and material; it must represent a substantial part of the value of the thing transferred. This much is necessary in order that the result accomplished may genuinely partake of the nature of merger or consolidation." The court then specifically rejected the contentions, here advanced, that the relationship of the taxpayer to the assets conveyed must continue substantially unchanged, and that dissolution of the old corporation is essential. In deference to these decisions, the respondent now urges as his principal ground for affirmance the suggestion that the acquisition by the taxpayers of stock in the new company was but nominal, and their retention of interest in the assets conveyed neither material nor substantial. To this contention we now address ourselves.

At the time of the transaction here involved, the total outstanding stock of the Enquirer-News Company consisted of 800 shares of common stock, of which Miller

owned 218 shares and Hawk 208 shares. In their agreements with the promoters of the new corporation, the petitioners undertook, however, to deliver all of the stock of the old company. What arrangement they had with the minority stockholders we do not know, but evidently it was mutually satisfactory, for all of the stock was delivered to the escrow agent as agreed. The new corporation was organized under the laws of Delaware, with an authorized capital stock of 10,000 shares of common stock, no-par value, subsequently increased by charter amendment to 150,000 shares of common and 52,000 shares of preferred. Of the common stock approximately 50,000 shares were issued on subscription and for initial organization, 52,000 shares reserved for conversion of preferred stock, 36,500 shares reserved for stock purchase warrants, while the balance remained unissued. The subscription agreements called for a price of $20 per share. Of the cash received by the new corporation from subscribers and from sale of preferred shares, $375,000 was paid for 600 shares of the stock of the Enquirer-News Company at $625 a share. Of this Miller received $86,250 for 138 shares, and Hawk received $55,000 for 88 shares. The rest went to other stockholders. The remaining 200 shares of Enquirer-News stock owned by the petitioners were acquired by the new corporation in exchange for 6,250 shares of its own common stock. Of this A. L. Miller received 2,500 shares for 80 shares of the old stock, and Hawk received 3,750 shares for 120 shares of the old stock. The petitioners were the active managers of the newspaper corporation and continued in that capacity for its new owner, Hawk, until his death and Miller until the present time. It will be observed that on the basis of $20 a share for the new stock, and $625 a share for the old stock, Miller and Hawk received for their exchanged shares stock of the value of $125,000, while together they received in cash on their own account $141,250, and on account of all of the stockholders of the old corporation, themselves included, $375,000.

The testimony is undisputed and unchallenged that neither Miller nor Hawk would consent to a sale of his interest in the Enquirer-News Corporation until each was assured that he would continue in the business of the new company. This was not only stipulated in the agreement with the purchasers, but the sellers also had that understanding between themselves. When it was suggested that they sign the subscription list of the new company, they demurred on the ground that they were not subscribing for new stock to be paid for in cash, but were merely exchanging old stock for new. After some conferences upon the subject with the purchasers, it was agreed that they would sign the subscription list, with the symbol "Ex" after their names to indicate an exchange of stock rather than a cash subscription.

The Supreme Court has of course, neither in the Minnesota Tea Company nor in companion cases, defined what is meant by a "definite and material interest," or "a substantial part of the value of the thing transferred," which it considers necessary in order that the result accomplished may genuinely partake of the nature of merger or consolidation. Manifestly, it could not be precise, for in the final analysis each case must rest upon its own peculiar facts. However, a controlling interest in the transferee corporation is not requisite. Nelson Company v. Helvering, supra. It was there held also that the owner of preferred stock is not without substantial interest in the affairs of the issuing corporation, although denied voting rights, for the statute does not require participation in the management of the purchaser. In the present case we find that the petitioners acquired an interest in the transferee of the value of $125,000. Their aggregate holding in the transferer was of the value of $266,250, based upon the sale price of $625 per share. It will therefore be seen that the petitioners acquired an interest in the new corporation almost equal to 50 per cent. of the interest they had in the old company, and exactly equal to 25 per cent. of the value of the total number of shares transferred. It is idle to say that this is not a substantial part of the value of the thing transferred, or does not constitute a definite and material interest in the affairs of the purchasing company. In the commonly accepted legal sense, a substantial interest is something more than a merely nominal interest, and, in respect to corporations, a definite and material interest is an interest beyond what is usually referred to as represented by "qualifying shares."

We attach no importance to the fact that some of the stockholders in the transferring corporation acquired no interest in the transferee. This is certainly not a test by which the effectuation of a merger or consolidation is to be determined, for it will rarely result when reorganizations, even in their strict literal sense, are undertaken that

all stockholders will approve. It is almost universal experience that some nonassenting stock must be acquired otherwise than through the mechanics of the consolidation plan. In any event, the petitioners here covenanted to deliver all of the stock of the old corporation, and did so. We are not concerned with the arrangement that enabled them to undertake the obligation. The transaction between the two corporations was a merger or consolidation within the statute.

The orders of the Board of Tax Appeals are set aside.