PACIFIC PUBLIC SERVICE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2159. Promulgated February 8, 1945.

*Scott C. Lambert, Esq., Granville S. Borden, Esq.*, and *Sigvald Nielson, Esq.*, for the petitioner.

*Harold D. Thomas, Esq.*, for the respondent.

OPINION.

OPPER, *Judge*: In order to compute the deductible loss sustained by petitioner upon a sale in the instant tax year it becomes necessary to fix a basis for the securities which it sold. This in turn involves the question whether the transaction by which petitioner received the stock through a 77B reorganization in exchange for certain interests in a predecessor company was such that petitioner's loss was then recognizable and a new basis acquired, or whether, as petitioner contends, it retained its original basis. This is the sole issue.

The nonrecognition is claimed under three theories—first, that it was an exchange of property for stock under section 112 (b) (5) ; second, that it was an exchange of stock or securities for stock or securities in a reorganization; and, third, that it is in any event covered

by the new provisions,[1] particularly section 112 (1), added by the Revenue Act of 1943.

It seems clear at the outset that this could not have been an exchange under 112 (b) (5). That section requires an identity of interest before and after the exchange, as well as an ownership or control of 80 percent in the same persons. It is stipulated that prior to the 77B reorganization the old company was insolvent. It might follow from this that the creditors would then step into the shoes of the stockholders and at least upon the institution of the receivership would so far succeed to the entire proprietary interest in the debtor that a delivery to them of all of the stock of the reorganized corporation would satisfy the requirements of identity of interest established by 112 (b) (5). *Helvering* v. *Cement Investors, Inc.,* 316 U. S. 527. But here the creditors, who on that theory would be entitled to all of the proprietary interest in the new corporation and its assets, and certainly at least to a controlling interest, acquired but 48 percent of the new stock and the secured creditors but 42 percent, petitioner as holder of an unsecured demand note obtaining the other 6. The preferred shareholders, who on the insolvency theory would be regarded as wiped out, obtained a majority interest. And it will not do to say that the insolvency theory might be disregarded, for that is the sole reason advanced for the complete elimination of the common shareholders.

By the same token, of course, the requirement that the owners of the property transferred shall retain a control of not less than 80 percent likewise acts as a bar to the application of 112 (b) (5). Not only did the creditors of the insolvent old corporation, the presumptive owners of all of its property, acquire less than an 80 percent interest in the transferee; they received, as has been pointed out, less than a 50 percent interest. If the financial condition of the old com-

---

[1] Section 112 (1) :

"(1) GENERAL RULE.—No gain or loss shall be recognized upon an exchange consisting of the relinquishment or extinguishment of stock or securities in a corporation the plan of reorganization of which is approved by the court in a proceeding described in subsection (b) (10) [under section 77B of the National Bankruptcy Act], in consideration of the acquisition solely of stock or securities in a corporation organized or made use of to effectuate such plan of reorganization.

"(2) EXCHANGE OCCURRING IN TAXABLE YEARS BEGINNING PRIOR TO JANUARY 1, 1943.—If the exchange occurred in a taxable year of the person acquiring such stock or securities beginning prior to January 1, 1943, then, under regulations prescribed by the Commissioner with the approval of the Secretary, gain or loss shall be recognized or not recognized—

"(A) to the extent that it was recognized or not recognized in the final determination of the tax of such person for such taxable year, if such tax was finally determined prior to the ninetieth day after the date of the enactment of the Revenue Act of 1943 ; or

"(B) in cases to which subparagraph (A) is not applicable, to the extent that it would be recognized or not recognized under the latest treatment of such exchange by such person prior to December 15, 1943, in connection with his tax liability for such taxable year."

pany was such that the interests in its assets were properly allocated as between creditors and preferred shareholders—a finding which incidentally would contradict the stipulated fact of insolvency [2]—that conclusion would have to appear from evidence of the assets and liabilities involved. In the absence of such evidence, it can not be assumed that the exchange in question was nontaxable under 112 (b) (5). *Bunker Hill & Sullivan Mining & Concentrating Co.*, 1 T. C. 1057, 1074.

Consideration of section 112 (b) (3) requires a separation of the various interests involved. Petitioner acted in four capacities. It was the owner of all of the common stock of the old company, as well as some of the preferred. It held its unsecured demand note for almost half a million dollars. And it owned some of the bonds. Under the plan of reorganization petitioner received blocks of common stock of the new company, the only class issued, in exchange for its bonds and preferred stock, and an additional common stock interest in exchange for the demand note. It received nothing for its common stock. This we think completely eliminates the latter as a part of petitioner's retained basis. Section 112 (b) (3) relates exclusively to exchanges. Since the common stock was exchanged for nothing, the loss was complete at that time. No part of petitioner's original basis for the common stock may hence be included as any part of its retained basis for the stock of the new company.

As to the exchange of bonds for bonds and common stock and of preferred stock for common, no question arises concerning the existence of an exchange and, since the old bonds and preferred stock were clearly securities of the old company, that portion of the requirements of section 112 (b) (3) is met. There might have been some doubt whether the exchange was the result of a statutory reorganization under the principle of *Helvering* v. *Southwest Consolidated Corporation*, 315 U. S. 194, and *Helvering* v. *Cement Investors, Inc., supra*. But, as will subsequently appear, this factor has been eliminated by the 1943 amendment. The consequence is that the claimed loss on that part of the new stock and bonds acquired in exchange for the bonds and for the preferred stock may be allowed.

When, however, we come to the exchange of the unsecured demand note for additional stock in the new company, we are met with the difficulty that the section requires an exchange of stock or securities for other stock or securities. It is clear that the demand note was not stock. It appears to be equally clear that it was not of sufficient dignity to be considered a security. *Bunker Hill & Sullivan Mining &*

---

[2] "* * * The full priority rule of *Northern Pacific R. Co.* v. *Boyd*, 228 U. S. 482 * * * gives creditors, whether secured or unsecured, the right to exclude stockholders entirely from the reorganization plan when the debtor is insolvent. * * *" *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179.

*Concentrating Co., supra; Commissioner* v. *Sisto Financial Corpora-
tion* (C. C. A., 2d Cir.), 139 Fed. (2d) 253. No case has been found
where a tax-free exchange under section 112 (b) (3) was held to have
resulted from the exchange of a demand note. The inclusion of such
an exchange in the entire plan, like the payment of cash, might not
prevent that section from applying to exchanges otherwise encom-
passed within the described class of transactions. See *United Gas·
Improvement Co.*, 47 B. T. A. 715; affd. (C. C. A., 3d Cir.), 142 Fed.
(2d) 216; certiorari denied, 323 U. S. 739. And long term notes,
especially where a number of them are outstanding, may represent
such an interest as to be considered securities. *Burnham* v. *Com-
missioner* (C. C. A., 7th Cir.) ; 86 Fed. (2d) 776; certiorari denied,
300 U. S. 683; *Commissioner* v. *Huntzinger* (C. C. A., 10th Cir.), 137
Fed. (2d) 128. But to hold that a short term or demand note is a
security in the face of such cases as *Pinellas Ice & Cold Storage Co.*
v. *Commissioner*, 287 U. S. 462, construing the same word in the same
section and holding that short term notes "were not securities within
the intendment of the Act," seems to us unjustifiable.

*United Gas Improvement Co., supra*, is not to the contrary. There
the opinion on review observes:

\* \* \* From what we have already pointed out, it seems clear that U. G. I.'s
economic interest in Nashville continued uninterrupted ·throughout. After the
reorganization, just as before, U. G. I. was the substantial owner of Nashville.

\* \* \* In substantial effect, the cancellation of the debt was but a contribu-
tion by the sole owner of the reorganized company to the capital of the com- ·
pany \* \* \* By just so much as U. G. I. thus contributed was its stock interest
in the reorganized company benefited. \* \* \*

Here petitioner may either be regarded as the sole stockholder prior to
the reorganization, but that interest was wiped out by it, or it may be
regarded as a creditor, in which event its interest was recognized to the
extent of a minor share in the new company's common stock. Viewed
from either standpoint, petitioner's release of its unsecured demand
note is not comparable to the capital contribution of a sole shareholder
such that the receipt of the stock at that time would prevent its de-
ducting as a loss the uncollected portion of the debt. See *Estate of
Isadore L. Myers*, 1 T. C. 100, appeal dismissed (C. C. A., 4th Cir.) ;
*Bunker Hill & Sullivan Mining & Concentrating Co., supra*. It fol-
lows that neither the basis for the common stock nor the amount repre-
sented by the demand note carried over as a part of petitioner's basis
for the new stock.

The only change in the situation resulting from the 1943 amendment
is, as has been suggested, that any doubt as to the tax-free character
of the transaction involving the bonds and preferred stock has been
eliminated. That section still requires that there be an exchange of

stock or securities which would not include the demand note. It permits, it is true, the relinquishment of an interest, as well as its exchange, but that must be in consideration of the receipt of stock or securities. Thus, petitioner's relinquishment of its common stock without any consideration equally fails to come within the amendment.

There can, however, be little doubt that, whether or not the transaction in question was a reorganization under section 112 (g), it does comply with the requirements of section 112 (l), since there was a 77B proceeding and the new company was employed to carry out the terms of the reorganization there adopted. Respondent insists that the section is inapplicable because it does not appear that petitioner definitively and formally treated the transaction as nontaxable in its prior dealings. We think, however, that failure to deduct the loss on its original return, coupled with the fact that no question has been raised by respondent and no subsequent amendment has been attempted by petitioner, leaves the entire matter in a state of as complete finality as could possibly have been achieved under the circumstances. We do not read respondent's regulations as calling for more. See *James F. Curtis*, 3 T. C. 648.

*Decision will be entered under Rule 50.*