THE ROBERT DOLLAR CO., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE ROBERT DOLLAR CO. (SUCCESSOR TO ADMIRAL ORIENTAL LINE), PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24939, 25000.   Promulgated May 29, 1952.

*Theodore R. Meyer, Esq., Hart H. Spiegel, Esq.,* and *Robert H. Schnacke, Esq.,* for the petitioner.

*T. M. Mather, Esq.,* and *Edward H. Boyle, Esq.,* for the respondent.

OPINION.

Van Fossan, *Judge:* It is the petitioner's contention that no loss is to be recognized on the surrender of the 20,000 shares of old stock in the reorganization in 1939 and that the basis for the new stock includes the cost of the debt and the old stock in measuring the loss on the sale of the new stock in 1941. In support of this argument it is urged that no gain or loss is to be recognized to Admiral in 1939 if the old stock in American was exchanged in pursuance of a plan of reorganization solely for stock or securities in the reorganized corporation. The petitioner relies upon section 112 (b) (3) of the Internal Revenue Code.[1]

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

The petitioner points out that no gain or loss is to be recognized because the 20,000 shares of old common stock were exchanged solely for the new stock in America. To qualify under section 112 (b) (3), the shares of stock exchanged must be in a corporation a party to the reorganization. A reorganization is defined in section 112 (g) (1) (E), I. R. C.,[2] to include "a recapitalization." The latter term requires a "reshuffling of a capital structure within the framework of an existing corporation." *Helvering* v. *Southwest Consolidated Corporation*, 315 U. S. 194. American was recapitalized if there existed in the reorganization the required continuity of interest by reason of Admiral's surrender of its old stock for its new proprietary interest. Although Admiral owned all of the preferred stock and approximately 42 per cent of the new common stock, including the shares held by the Dollar family or corporations controlled by them, after the reorganization, instead of all of the stock as before, a reorganization may require a downward adjustment of the rights of participants. *Hoagland Corporation*, 42 B. T. A. 13, affd. 121 F. 2d 962; *Miller* v. *Commissioner*, 84 F. 2d 415; *Seiberling Rubber Co.* v. *Commissioner*, 169 F. 2d 595.

Since the recapitalization consisted of the surrender of old securities and stock of the corporation, together with claims against it for the new shares of stock of the same company, the surrender of the old stock and receipt of the new was in pursuance of the plan of reorganization. The fact that petitioner also surrendered claims against American as additional consideration would not preclude the application of section 112 (b) (3) if stock was also given in exchange. *United Gas Improvement Co.*, 47 B. T. A. 715, affd. (C. A. 3) 142 F. 2d 216, certiorari denied 323 U. S. 739. Only stock was received in the reorganization so that if the old shares of stock were part of the consideration the exchange was solely for stock or securities.

The focal point of controversy in the first issue is whether the surrender of the old stock was part of the exchange or whether it was surrendered without receipt of value. It is respondent's contention that section 112 (b) (3) cannot apply because the old stock was surrendered for nothing and there could be no exchange since the creditors' claims do not qualify as securities. This argument is based upon the fact that all of the shares of new stock were issued for a specific dollar amount of debt claims against the corporation. It is also pointed out that the Referee-Special Master stated in his report that the old shares were surrendered by Admiral for nothing. It is respondent's position that Admiral received its proprietary interest in

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

　　*　　　　　*　　　　　*　　　　　*　　　　　*　　　　　*　　　　　*

　(g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (l) and in section 113 (other than subsection (a) (22))—

　　　(1) The term "reorganization" means　*　*　*　(E) a recapitalization,　*　*　*.

the recapitalized corporation solely for the surrender of its claims against American.

The petitioner maintains that the old stock represented a valuable equity and that the District Court recognized this equity in the reorganization. The corporate balance sheets as of the date the reorganization petition was filed and as of the date the trustee had possession of the assets showed that the stock still possessed a book value of more than $600,000. It is claimed that the actual value of the stock was greater in October 1939 when the plan was confirmed because the market value of ships had increased following the beginning of World War II. The District Court stated in approving and confirming the plan of reorganization that the plan was to be submitted to the stockholder, that the stockholder was one of the classes for the purposes of the plan, that the appointment of new officers and directors was compatible with the interest of the stockholder, and that the stockholder had accepted the plan. Section 175 of the Bankruptcy Act, 11 U. S. C. 575, requires the transmission of the approved plan to a stockholder affected by the plan. By the provisions of section 107, 11 U. S. C. 507, stockholders are "affected" by a plan if their interest is adversely affected thereby. The judge is required by section 197, 11 U. S. C. 597, to divide creditors and stockholders into classes according to the nature of their claims and stock. Section 221, 11 U. S. C. 621, specifies that the judge shall confirm a plan if satisfied that the appointment of persons to be directors and officers is compatible with the interest of stockholders. Section 179, 11 U. S. C. 579, declares that the judge shall fix a hearing for the consideration of the confirmation of a plan after the plan has been accepted in writing by the stockholders holding a majority of the stock, if the debtor has not been found to be insolvent. The District Court in the present instance did not need the acceptance of Admiral as a stockholder if American had been insolvent. The announcement of such acceptance might imply the fact that American was not insolvent. The other references to stockholders do not imply such a conclusion because they appear to be procedural requisites of a Chapter X reorganization.

The plan of reorganization does not state that the surrender of stock was in consideration or exchange for anything. Nor does it state that nothing was to be received in exchange for the surrender of the stock. Admiral, as owner of all the stock in American and creditor to the extent of $35,290 of the $469,850 Class A claims and as creditor of $234,630 of the $288,720 Class B claims, as well as the holder of a mortgage which was not satisfied by transfer of the mortgaged property, was the principal party interested in the reorganization. The proceedings were based upon the inability of American to pay its debts as they matured. Unlike *Pacific Public Service Co.*, 4 T. C. 742, insolvency is not a stipulated fact, and there was no allegation or finding

of insolvency in the reorganization. Some book value was attributed to the old stock on the corporate balance sheets. The fair market value in October 1939 of four of the five ships was fixed by expert testimony at $650,000 for each vessel. The President Madison was sold in that month for $350,000, which was its fair market value. We cannot say that the valuation of assets was unduly high despite the fact that four of the five ships were surrendered to the Maritime Commission in payment of mortgage claims of $540,000 because the plan also required the Maritime Commission to allow credits on the new vessels to be purchased in consideration for the transfer to the Commission of American's ships after the satisfaction of the mortgage claims. While it is true that the Referee-Special Master stated in his report summarizing the confirmed plan that nothing will be received for the stock in the reorganization, this announcement does not foreclose our inquiry. In *United Gas Improvement Co., supra*, the reorganization plan itself expressly provided that the common and preferred shares would be turned in and canceled and nothing would be received for them. This Court there said that this statement does not determine what actually was done or the tax consequences thereof. As above noted, our decision was affirmed by the Court of Appeals for the Third Circuit.

The facts in this proceeding differ from those of the *United Gas Improvement Co.* case, but the principle there applied appears applicable here. The stock surrendered by Admiral possessed some equity value. We cannot say that even though the issuance of the new stock was measured in terms of creditors' claims that the stock issued to Admiral was not given in exchange for the cancellation of the claims and stock. That being true, we conclude that stock as well as creditors' claims were exchanged solely for stock in accordance with section 112 (b) (3).

The new stock received in the recapitalized corporation must be given the same basis for purposes of determining gain or loss upon subsequent disposition as the property exchanged therefor under the provisions of section 113 (a) (6), I. R. C.[3] Consequently the basis of the Class A and Class B stock at the time of its receipt is the combined

<hr/>

[3] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

\* \* \* \* \* \* \*

(6) TAX-FREE EXCHANGES GENERALLY.—If the property was acquired, after February 28, 1913, upon an exchange described in section 112 (b) to (e), inclusive, or section 112 (1), the basis (except as provided in paragraphs (15), (17), or (18) of this subsection) shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. \* \* \*

basis of the old stock and the Class A and Class B creditor claims surrendered. This basis, at the time of sale in 1941, had been increased by the capital expenditures made in connection therewith subsequent to its acquisition but prior to its sale.

The second issue is whether the petitioner's tranferor, Admiral, received net abnormal income attributable to other years in the determination of its excess profits tax for 1940. The petitioner contends that the sale of the ships, Admiral Laws and Admiral Senn, resulted in such abnormal income attributable to 1939 under the terms of section 721, I. R. C.[4] Admiral sold no ships during the period 1936

---

[4] SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD.
    (a) DEFINITIONS.—For the purposes of this section—
        (1) ABNORMAL INCOME.—The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence.
        (2) SEPARATE CLASSES OF INCOME.—Each of the following subparagraphs shall be held to describe a separate class of income:
            (A) Income arising out of a claim, award, judgment, or decree, or interest on any of the foregoing; or
            (B) Income constituting an amount payable under a contract the performance of which required more than 12 months; or
            (C) Income resulting from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months; or
            (D) Income includible in gross income for the taxable year rather than for a different taxable year by reason of a change in the taxpayer's accounting period or method of accounting; or
            (E) In the case of a lessor of real property, income included in gross income for the taxable year by reason of the termination of the lease; or
            (F) Income consisting of dividends on stock of foreign corporations, except foreign personal holding companies.
    All the income which is classifiable in more than one of such subparagraphs shall be classified under the one which the taxpayer irrevocably elects. The classification of income of any class not described in subparagraphs (A) to (F), inclusive, shall be subject to regulations prescribed by the Commissioner with the approval of the Secretary.
        (3) NET ABNORMAL INCOME.—The term "net abnormal income" means the amount of the abnormal income less, under regulations prescribed by the Commissioner with the approval of the Secretary, (A) 125 per centum of the average amount of the gross income of the same class determined under paragraph (1), and (B) an amount which bears the same ratio to the amount of any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived as the excess of the amount of such abnormal income over 125 per centum of such average amount bears to the amount of such abnormal income.
    (b) AMOUNT ATTRIBUTABLE TO OTHER YEARS.—The amount of the net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary. In the case of amounts otherwise attributable to future taxable years, if the taxpayer either transfers substantially all its properties or distributes any property in complete liquidation, then there shall be attributable to the first taxable year in which such transfer or distribution occurs (or if such year is previous to the taxable year in which the abnormal income is includible in gross income, to such latter taxable year) all amounts so attributable to future taxable years not included in the gross income of a previous taxable year.

     *        *        *        *        *        *        *

to 1939, inclusive. The pertinent provisions of Regulations 112, section 35.721-1, specify that "* * * It is abnormal for a taxpayer to derive income of any class only if the taxpayer had no gross income of that class for the four previous taxable years. * * *" The income here in question, therefore, must be considered abnormal. The petitioner does not contend that the income received by it falls within the classes of income described in section 721 (a) (2). The statute declares that income of any class not described shall be subject to regulations prescribed by respondent with the approval of the Secretary. Regulations 112, section 35.721-2, provides that:

Income which does not fall within those provisions may be grouped by the taxpayer, subject to approval by the Commissioner on the examination of the taxpayer's return, in such other classes as are reasonable in a business of the type which the taxpayer conducts, and as are appropriate in the light of the taxpayer's business experience and accounting practice.

\* \* \* \* \* \* \*

Section 721 (b) declares that net abnormal income received in one year which is attributable to other years and thus excludible from the taxable year is to be determined under regulations of the respondent.

The petitioner obtained the income in question by means of the sale of ships at a price which was greater than the amount spent on the purchase and rehabilitation of the vessels. As stated in Regulations 112, section 35.721-3, dealing with the amount of net abnormal income attributable to other years, "No portion of an item of net abnormal income is to be attributed to any previous year solely by reason of an investment by the taxpayer in assets, tangible or intangible, employed in or contributing to the production of such income." The petitioner urges that the income received in 1940 arose from the enhancement in value of the ships, part of which occurred in 1939, and there is some evidence to this effect. However, expenditure of money in the purchase and rehabilitation of the ships was an investment and the sale of the vessels at a profit in the following year was the realization of a gain upon the investment. The enhancement in value of the ships cannot be separated, as a source of the income, from the investment in the vessels. Income from an investment includes the gain realized from the sale of the asset at a price greater than the amount invested. Since the sale of the ships produced the income, there is no doubt that the ships were tangible assets contributing to the production of the income. We conclude that the principles applied in *Premier Products Co.*, 2 T. C. 445, rule this situation. Gain from investment cannot be attributed to prior years in the face of the respondent's regulation which is made controlling by the statute.

*Decisions will be entered under Rule 50.*