Estate of Alexander Lincoln, Deceased, Eleanor Ames Lincoln and Edward W. Raye, Executors, and Eleanor Ames Lincoln v. Commissioner.
Estate of Lincoln v. Commissioner
Docket No. 49539.
United States Tax Court
T.C. Memo 1955-70; 1955 Tax Ct. Memo LEXIS 270; 14 T.C.M. (CCH) 225; T.C.M. (RIA) 55070; March 24, 1955
Edward W. Raye, Esq., for the petitioners. R. Monroe Schwarts, Esq., for the respondent. JOHNSON Memorandum Opinion JOHNSON, Judge: Respondent determined a deficiency in the income tax of Alexander Lincoln and Eleanor Ames Lincoln for the year 1949 in the amount of $3,705.30. The sole issue before us is whether they sustained a deductible loss when they surrendered certain capital stock pursuant to a plan of reorganization. *271 [Findings of Fact] All of the facts were stipulated and are incorporated herein by this reference. Alexander Lincoln and Eleanor Ames Lincoln, husband and wife, resided in Brookline, Massachusetts, during 1949. They filed a joint income tax return for 1949 with the collector of internal revenue for the first district of Massachusetts. Alexander Lincoln died on August 11, 1954, and Eleanor Ames Lincoln and Edward W. Raye were appointed executors of his estate. On December 1, 1947, the Andover Silver Company, Inc., hereinafter referred to as the corporation, was incorporated under the laws of the Commonwealth of Massachusetts. The corporation was authorized to issue 750 shares of $100 par value preferred stock and 5,000 shares of no par common stock. The principal office was in Andover, Massachusetts, and the corporation manufactured, bought and sold articles of silver. Shortly after its incorporation the corporation suffered financial difficulties and in 1949 a plan of reorganization was proposed. The plan envisaged that common stockholders would surrender 60 per cent of their stock to the corporation, that preferred stockholders would exchange their stock for common stock *272 in the ratio of 3 shares for 1 preferred share, and, finally, that creditors other than trade creditors would accept in settlement of the corporation's debts common stock in the ratio of one share for each $20 of the principal amount of their claims. Prior to the adoption of the plan of reorganization the common stockholders and creditors (other than trade creditors) were as follows: No. of
Shares
Com-
Pre-
Amount
mon
ferred
of Debt
Alexander Lincoln
150
20
$ 2,000
Eleanor Ames Lincoln
375
25
6,000
Emily A. Lincoln
150
20
William A. Lincoln
1,500
25,500
Alexander Lincoln, Jr.
5
Elizabeth C. Lincoln
2,500
David Ames
1,000
Edwin O. Baker
10
Frederic C. Church
2,500
Gordon T. Marshall
5,000
Ann Dudley Newell
25
Samuel R. Payson
25
Wallace L. Pierce
25
S. L. St. John
2,000
Dana A. Steele
250
Elizabeth S. Whiteside
50
Howard S. Whiteside
50
Nathaniel T. Winthrop
250
5,000
Total
2,865
65
$51,500
A proposed plan of reorganization was adopted by the board of directors on June 30, 1949, and was later approved by all stockholders and by all unsecured creditors, with the exception of Gordon *273 T. Marshall. The aggregate claims of the assenting creditors were $46,500 and Marshall's claim was $5,000. Around the first of November 1949, the common stockholders surrendered 60 per cent of their stock and retained 40 per cent. The preferred stockholders received 195 shares of common stock in exchange for their 65 shares of preferred stock. The creditors received 2,325 shares of common stock in settlement of debts owed to them. After the reorganization there were 3,666 shares of outstanding common stock. On November 2, 1949, decedent and his wife delivered to the corporation their certificates for common and preferred stock and their notes in exchange for common stock pursuant to the plan of reorganization. After the reorganization became effective, decedent held 220 shares of stock, his wife 525 shares, and 15 others held an aggregate of 2,921 shares. The sole issue is whether decedent and his wife are entitled to deduct an alleged loss of $6,300 resulting from their surrender of 315 shares of common stock. [Opinion] Respondent contends that no loss was recognized on the transaction when decedent and his wife surrendered their stock. The basis of respondent's theory *274 is that there was a recapitalization and under section 112(g)(1)(E) of the 1939 Code this recapitalization was a statutory reorganization. Further, he contends that under section 112(b)(3) no loss was recognized "if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." Decedent and his wife argue that the surrender of their common stock resulted in a loss under section 23(e)(2), [1] and could not have been an exchange under section 112(b)(3) because they received nothing in exchange for their stock. True, they received nothing in exchange for their common stock per se, but when the entire plan of reorganization is considered there has been an exchange within the meaning of section 112(b)(3). The plan of reorganization as it applied to decedent required the exchange of preferred for common, accounts receivable for common, and, in addition, the surrender of a part of his common stock. Each of these steps was part of the entire plan of reorganization and each step may not be considered as a separate transaction. *275 Each step depended upon the other for the completion of the plan, that is, common stock had to be surrendered to the corporation before that common stock could be exchanged for the corporation's outstanding debts and preferred stock. The transaction in this proceeding is similar to that in Hoagland Corporation, 42 B.T.A. 13, affd. 121 Fed. 962, wherein the taxpayer exchanged stock and notes receivable for stock in a recapitalized corporation. There the Tax Court held the transaction was squarely within the provisions of section 112(b)(3), and no loss should be recognized. See Robert Dollar Co., 18 T.C. 444. Similarly, in the present case the exchange of preferred stock and corporate obligations for common stock, coupled with the surrender of common stock, bring the transaction squarely within the provisions *276 of section 112(b)(3) and no loss can be recognized on the surrender of common stock in the year before us. Finally, it should be pointed out that even if this surrender of common stock was not within the purview of section 112(b)(3, the decedent and his wife would not be entitled to a loss deduction. * For we know the cost basis of the surrendered stock, but we have no evidence as to the improved value of the retained stock. And without proof of the value of the retained stock, a mathematical determination of the loss can not be made. Decision will be entered for the respondent. Footnotes
1. SEC 23. DEDUCTIONS FROM GROSS INCOME. * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * *
(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *↩
*. This sentence was changed by Order of the Tax Court date dated April 19, 1955 by inserting the word "not" between the words "was" and "within."↩