TAYLOR-WHARTON IRON AND STEEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4387.   Promulgated September 20, 1945.

*Lawrence A. Baker, Esq.*, for the petitioner.
*Paul E. Waring, Esq.*, for the respondent.

770

## OPINION.

Kern, *Judge*: The principal question presented in this proceeding is whether petitioner, in computing its equity invested capital under the excess profits tax provisions of the statute in effect during the taxable year, must reduce its accumulated earnings and profits by amounts which it sustained as losses upon the liquidation of several of its wholly owned subsidiaries, undiminished by the prior annual operating losses of the subsidiaries which had been availed of by petitioner in the reduction of the consolidated income of itself and its subsidiaries reported by it for the years before the liquidation of these subsidiaries. The pertinent provisions are set out in the margin.[1] It is obvious that under these provisions it is advantageous to the taxpayer that its equity invested capital be as large, as undiminished, as possible.

Briefly stated, petitioner's contention is that the basis of its investment in its subsidiaries for determining gain or loss for income tax

---

[1] Sec. 714, I. R. C., as amended by secs. 201 (b) and 205, Revenue Act of 1941:

"The excess profits credit for any taxable year, computed under this section, shall be the amount shown in the following table:

"If the invested capital for the taxable year, determined under section 715, is:        The credit shall be:
Not over $5,000,000_____        8% of the invested capital."

*     *     *     *     *     *

Sec. 715, I. R. C., as added by sec. 201, Second Revenue Act of 1940:

"For the purposes of this subchapter the invested capital for any taxable year shall be the average invested capital for such year, determined under sec. 716, * * *."

Sec. 716, I. R. C.:

"The average invested capital for any taxable year shall be the aggregate of the daily invested capital for each day of such taxable year, divided by the number of days in such taxable year."

Sec. 717, I. R. C.:

"The daily invested capital shall be the sum of the equity invested capital * * * plus the borrowed invested capital * * *."

Sec. 718 (a) (4), I. R. C.:

"(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

*     *     *     *     *     *     *

(4) EARNINGS AND PROFITS AT BEGINNING OF YEAR.—The accumulated earnings and profits as of the beginning of such taxable year; * * *"

purposes upon their liquidation must be adjusted by deducting from its unadjusted basis the amount of the subsidiaries' operating losses for the years in which consolidated returns were made under the provisions of section 113 (b) (1) (A) of the Revenue Act of 1934, and article 113 (b)-1, Regulations 86, the pertinent parts of which are set out in the margin; [2] that by the provisions of section 115, Internal Revenue Code,[3] losses shall decrease earnings and profits "to, but not beyond, the extent to which such a realized * * * loss was recognized in computing net income * * *"; that the effect of adjusting its basis as to its investments in subsidiaries by deducting therefrom the amount of the subsidiaries' operating losses availed of by it in making its consolidated income tax returns was to *not* recognize in computing net income that part of the loss arising from the liquidation of its subsidiaries which represented the operating losses of the subsidiaries for the years in which consolidated returns were made; and that therefore its accumulated earnings and profits should be reduced by reason of losses arising from such liquidation only to the extent that these losses were in excess of the total of the operating

---

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

* * * * * * *

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

(A) For expenditures, receipts, losses, or other items, properly chargeable to capital account, * * *

ART. 113 (b)-1. [Regulations 86.] *Adjusted basis: General rule.*—The adjusted basis for determining the gain or loss from the sale or other disposition of property, is the cost of such property or, in the case of such property as is described in paragraphs (1) to (14), inclusive, of section 113 (a), the basis therein provided, adjusted to the extent provided in section 113 (b).

The cost or other basis shall be properly adjusted for any expenditure, receipt, loss, or other item, properly chargeable to capital account, * * *

* * * * * * *

Adjustments must always be made to eliminate double deductions or their equivalent. Thus, in the case of the stock of a subsidiary company, the basis thereof must be properly adjusted for the amount of the subsidiary company's losses for the years in which consolidated returns were made.

* * * * * * *

[3] SEC. 115 (1). * * * The gain or loss realized from the sale or other disposition (after February 28, 1913) of property by a corporation—

(1) for the purpose of the computation of earnings and profits of the corporation, shall be determined * * * by using as the adjusted basis the adjusted basis (under the law applicable to the year in which the sale or other disposition was made) for determining gain, except that no regard shall be had to the value of the property as of March 1, 1913; * * *

* * * * * * *

Gain or loss so realized shall increase or decrease the earnings and profits to, but not beyond, the extent to which such a realized gain or loss was recognized in computing net income under the law applicable to the year in which such sale or disposition was made. Where, in determining the adjusted basis used in computing such realized gain or loss the adjustment to the basis differs from the adjustment proper for the purpose of determining earnings or profits, then the latter adjustment shall be used in determining the increase or decrease above provided. For the purpose of this subsection a loss with respect to which a deduction is disallowed under section 118, or a corresponding provision of a prior income-tax law, shall not be deemed to be recognized. * * *"

losses of the subsidiaries availed of in its consolidated income tax returns.

Thus, if the petitioner's investment in a subsidiary was in the amount of $1,000,000 and the subsidiary was later liquidated, and as a result of such liquidation petitioner received property in the amount of $500,000, petitioner would not be required to reduce its accumulated earnings and profits on account of any loss incident to the liquidation if the subsidiary had had operating losses during the years prior to its liquidation which aggregated a total of $500,000 and had been availed of by petitioner in consolidated income tax returns. This would be true, according to petitioner's contention, regardless of whether the books of the parent corporation, as distinguished from its income tax returns, ever reflected, with regard to its accumulated earnings and profits, any of the operating losses of the subsidiary. In the instant case it would appear from the stipulation that petitioner's books did not reflect, with regard to its accumulated earnings and profits, any of the operating losses of its subsidiaries.

Respondent contends that the entire realized loss was recognized in computing petitioner's net income for 1935, even though the amount allowable as a deduction was less than the entire realized loss; that the requirement of the regulations and decisions that, for the purposes of computing the loss allowable as a deduction, the basis of petitioner's investment then being liquidated be reduced by the amount of the subsidiary's prior operating losses availed of on consolidated returns, did not constitute a nonrecognition of the realized loss; that the adjustment to petitioner's basis so required for income tax purposes differed from the adjustment proper for the purpose of determining earnings and profits, and that, therefore, the latter adjustment is to be used, in accordance with the provisions of section 115 (l), quoted above. It should be noted that the term "accumulated earnings and profits" is not defined in the revenue acts. See Regulations 109, sec. 30.718.2.

In support of the first point set out above, respondent cites Regulations 103, sec. 19.115–12, as amended by T. D. 5024, 1940–2 C. B. 110, 113, in clarification of section 115 (l):

As used in this subsection the term "recognized" has reference to that kind of realized gain or loss which is recognized for income tax purposes by the statute applicable to the year in which the gain or loss was realized, for example, see section 112. A loss may be recognized, though not allowed as a deduction * * * but the mere fact that it is not allowed does not prevent decrease in earnings and profits by the amount of such disallowed loss. The "recognized" gain or loss for the purpose of computing earnings and profits is determined by applying the recognition provisions to the realized gain or loss computed under the provisions of section 115 (l) as distinguished from the realized gain or loss used in computing net income.

There is no dispute that the 1935 liquidations were taxable transactions; in other words, both parties agree that the losses sustained therein were such losses as were recognized by the tax law then in effect. The difference of opinion which gives rise to this phase of the issues is whether the bar to deduction of the loss realized to the extent of the prior deductions on the consolidated returns of the operating losses of the subsidiaries is a nonrecognition of the loss within the meaning of section 115 (l), *supra*.

Section 115 (l) was added to the code by the Second Revenue Act of 1940. The report of the Subcommittee on Internal Revenue Taxation of the Committee on Ways and Means Relative to Excess-Profits Taxation and Special Amortization, on page 15, says:

Your subcommittee recommends that chapter I of the Internal Revenue Code be clarified in order that the unrecognized gain or loss upon the sale or exchange of property by a corporation not be reflected in its earnings or profits account. This rule is in accord with the previous practice adopted by taxpayers and the Bureau of Internal Revenue alike, and set forth in the income-tax regulations.

The Ways and Means Committee reported, at page 41, relative to the section now under consideration:

The purpose of this amendment is to clarify the law with respect to what constitutes earnings and profits of a corporation. This is important not only for the purpose of determining whether distributions are taxable dividends but also in determining equity-invested capital for excess-profits tax purposes.

Section 401 of the bill inserts subsection (l) in section 115 of the Internal Revenue Code and correspondingly amends prior revenue acts. The rule, applied by the Treasury under existing law, is that while gains or losses which are not recognized by reason of the provisions of section 112 neither increase nor diminish the earnings or profits, the earnings or profits are increased or diminished by the entire amount of the recognized gain or loss, computed in accordance with the provisions of sections 111, 112 and 113. Together with the provisions of section 115 (h) of the Internal Revenue Code, and the principles established in *Commissioner v. Sansome*, 60 Fed. (2d) 931, and following decisions, the rule effectuates the provisions of section 112. While taxpayers generally have concurred in the rule applied by the Treasury, the Board of Tax Appeals and some of the Courts have not agreed, but have followed the theory that gain or loss, even though not recognized in computing net income, nevertheless affects earnings and profits. * * * [Reference is here made to *Commissioner v. F. J. Young Corporation*, 103 Fed. (2d) 137.] The need for certainty, not only with respect to the determination of when dividends are taxable, but also in the computation of the excess-profits tax credit, makes it desirable to clarify existing law.

The report of the Senate Committee on Finance, page 23, refers to the point under discussion in this language:

This provision relates to gains or losses which are recognized pursuant to the provisions of law, for instance by reason of the provisions of section 112 of the Internal Revenue Code. It does not relate to losses disallowed or not taken into account, such as those under section 24 (h), section 118 and section 117 of the Code.

The conference report, at page 60, covers the situation as follows:

Subsection (1) provides that the gain or loss realized from the sale or other disposition (after February 28, 1913) of property by a corporation is to be determined for two purposes: (1) The computation of earnings and profits of the corporation as a whole, primarily for invested-capital purposes, and (2) the computation of earnings and profits of the corporation for any period beginning after February 28, 1913, for the purpose of determining the character of dividend distributions. In (1) there is used the adjusted basis (under the law applicable to the year in which the sale or other disposition is made) for determining gain, but disregarding value as of March 1, 1913. * * * The term "adjusted basis" means adjusted basis specified by the law, for example, see section 113 (b) of the Internal Revenue Code, but is subject to the limitations of the third sentence of subsection (1) relative to adjustments proper in determining earnings and profits. The proper adjustments may differ under subsection (1) (1) and (2). Where the operation of subsection (1) results in a loss to be applied in decrease of earnings and profits, such loss may be subject to an adjustment required by subsection (m) (2).

The provisions in the House and Senate bills, that gain or loss so realized shall increase or decrease the earnings and profits to, but not beyond, the extent *recognized* in computing net income under the law applicable to the year in which such sale or disposition was made, are retained. As used in this subsection, the term "recognized" relates to a realized gain or loss which is recognized pursuant to the provisions of law, for example, see section 112 of the Internal Revenue Code. It does not relate to losses disallowed or not taken into account.

From these excerpts, the intent of Congress in enacting section 115 (1) as applied to the instant case appears to have been that accumulated earnings and profits are to be decreased by such losses as are recognized, for instance, under section 112. It is not intended to exclude losses which, though recognized, are disallowed in whole or in part, such as those covered by sections 117 and 118, and section 24 (b). Admittedly, the exchange which gave rise to the loss here did not come within any of the exceptions provided by section 112 to its general rule that "upon the sale or exchange of property, the entire amount of the gain or loss, determined under section 111, shall be recognized." There is no dispute that it resulted in a loss recognized under the terms of section 112. It was a recognized loss, even though a part of it was disallowed as a deduction.

We must now consider petitioner's contention that the amount of its recognized loss was $2,243,672.14, resulting from its use in the computation of the reduced basis required by the provisions of the act then in effect, instead of $5,580,622.28, determined by respondent, resulting from the use of the cost basis of petitioner's investments in its liquidated subsidiaries.

Respondent points out that section 115 (1) provides that where, in determining the adjusted basis and in computing such realized gain, or loss, the adjustment to the basis differs from the adjustment proper for the purpose of determining earnings and profits, then the

latter adjustment shall be used in determining the increase or decrease therein authorized.

Section 115 (1) provides that the gain or loss, for the purpose of computing earnings and profits, shall be determined by using, as the adjusted basis, the adjusted basis under the law applicable to the year in which the sale or other disposition was made for determining gain, except that no regard shall be had to the value of the property as of March 1, 1913.

We have already set out section 113 (b) (1) (A) of the Internal Revenue Act of 1934, and Regulations 86, article 113 (b)–1. The latter requires that in computing gain or loss from the disposition of stock of a subsidiary under such circumstances, the basis must be reduced by the amount of the net operating loss of the subsidiary availed of on consolidated returns for prior years.

The respondent contends, as to this, that the adjustment to the basis required for income tax purposes by the regulation referred to differs from the adjustment proper for computing earnings and profits, citing the illustration contained in section 19.115–12, Regulations 103, as amended by T. D. 5024, 1940, 2 C. B. 110, 113, demonstrating the difference between adjustments to basis proper for determining earnings and profits and those required for income tax purposes, with reference to an oil lease.

By analogy, respondent argues in the instant case that, although for computing gain and loss for income tax purposes on liquidation the bases of petitioner's investments in its subsidiaries were properly reduced by the amount of its subsidiaries' losses availed of on consolidated returns, nevertheless, for the purpose of computing earnings and profits, as a part of its invested capital for excess-profits tax purposes, the bases should not be so reduced, so that the entire amount of realized loss was properly applied in reduction of earnings and profits under the terms of section 115 (1).

The resolution of this issue requires some notice of the reason for the requirement of the adjustments to basis in the determination of gain or loss upon the disposition by a corporation of stock in a subsidiary which is a member of a group for which consolidated returns have been filed, and whose net operating losses have been availed of thereby.

It is obvious that the deduction of the net operating losses of a subsidiary by a parent on a consolidated return results in the reduction of the parent's own taxable income. To allow it to deduct from its income in the year of liquidation its entire loss on liquidation would constitute as to a part of such loss the allowance of the same deduction twice. See *Burnet* v. *Riggs National Bank*, 57 Fed. (2d) 980; *Manchester Savings Bank & Trust Co.*, 34 B. T. A. 1008; *Jordahl & Co.*, 35 B. T. A. 1136; *American Utilization Co.*, 38 B. T. A. 322; *Ilfeld*

*Co.* v. *Hernandez*, 292 U. S. 62; *McLaughlin* v. *Pacific Lumber Co.*, 293 U. S. 351; *Commissioner* v. *National Casket Co.*, 78 Fed. (2d) 940; *Greif Cooperage Co.* v. *Commissioner*, 85 Fed. (2d) 365.

The reduction of the basis for computing gain or loss does not result in a nonrecognition, for tax purposes, of any part of the realized loss. but simply assures that the whole realized loss is recognized once, but only once, in the computation of taxable income. Since some part of the loss has, in effect, been allowed as a deduction in a prior year, that part is not again allowed in the year of liquidation, and the fact that the Commissioner has made the bar against double deductions in such cases a part of his regulation dealing with the basis of property for gain or loss purposes, rather than a part of some other regulation or an entirely separate regulation dealing with double deduction, does not indicate or demonstrate nonrecognition of any part of the loss sustained, where, as here, the very essence of the proposition is that the loss is recognized in full, but for the purpose of determining net income in the year of liquidation only that part of the loss not previously deducted is allowable as a deduction from gross income.

The concept of accumulated earnings and profits for the purpose of the excess profits tax contemplates, basically, the sum of the earnings less the losses sustained. The entire realized loss on the liquidations involved here must be applied once (although only once) in reduction of the earnings and profits, just as it was allowed once and only once in the computation of taxable income. Under the method contended for by the petitioner, the entire amount of such loss would never be reflected in its earnings and profits if the liquidated subsidiary had had operating losses which had been availed of in returns of consolidated income. It is true that these operating losses of subsidiaries would have reduced the net taxable income of the consolidated group, but there is nothing in the record to show, nor would we suppose, that they would in any way be reflected on the petitioner's own books or would reduce its own accumulated earnings and profits as shown thereon. They were losses of different corporations; not the losses of petitioner. And they were not made the losses of petitioner by reason of the grace of the revenue act in permitting them to be included in the computation of the taxable net income of a consolidated group. So far as the petitioners' own books were concerned, its accumulated earnings and profits could properly be reduced as a result of the liquidation of a subsidiary only at the time of the liquidation even though the loss then realized was, in large part, occasioned by repeated annual operating losses sustained by the subsidiary.

The result thus contended for by the petitioner is not required by

the statute. It would cause an unnecessary distortion of "accumulated earnings and profits" in computations under the excess profits tax provisions of the revenue acts. We conclude therefore that the regulation calling for the adjustment of the basis to cover operating losses ·of subsidiaries previously deducted from consolidated income, although accomplishing its purpose in preventing double deductions in determining net income, can have no reasonable application to the precise ·question here presented. Accordingly, the reduction to the basis required for the computation of the loss allowable for income tax purposes in 1935 is not a proper adjustment for the computation of accumulated earnings and profits as a part of equity invested capital under the excess profits tax provisions of the statute.

The cases cited by petitioner are not inconsistent with the result at which we have arrived. In *Lorin A. Cranson*, decided by the United States District Court for the Northern District of California, Southern Division, affd., 146 Fed. (2d) 823, the liquidation involved was a tax-free transaction under the provisions of section 112 (b) (6) of the Revenue Act of 1938 and the loss was therefore not "recognized" within the meaning of section 115 (1). In *Butter-Nut Baking Co.* v. *Commissioner*, 3 T. C. 423, the gains involved were insurance proceeds which were not recognizable for tax purposes. Neither case is inconsistent with our decision here.

## *Liquidation of 1938.*

Tioga Steel & Iron Co., a wholly owned subsidiary of the petitioner, was liquidated in 1938. Petitioner's investment in Tioga was made up of $200,000 paid for capital stock and $1,201,627.44 on open account, or a total investment of $1,401,627.44. Petitioner received assets on liquidation of the total book value of $314,256.34. Tioga had sustained operating losses during the years 1919 to 1933, in the total amount of $1,288,487.01. The liquidation was tax-free, by reason of the provisions of section 112 (b) (6) of the Revenue Act of 1938 to the effect that:

No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if:

(A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total number of shares of all other classes of stock.

Since the amount used by petitioner as the book value of the net assets received in liquidation was $313,586.77, petitioner, in order to reflect no gain or loss from the transaction, reduced the amount of the operating losses availed of in computing its consolidated income

from $1,228,487.01 to $1,087,371.10, the difference of $141,115.91 being the amount of gain it would have realized if the transaction had been taxable and if, in computing the amount of its gain, it had been required to reduce its basis by the amount of operating losses so availed of.

Petitioner, in computing its equity invested capital for excess profits tax purposes increased its accumulated earnings and profits by $1,087,371.10. Respondent reduced the accumulated earnings and profits in that amount.

Petitioner argues that its equity invested capital should be increased by the amount of losses availed of on consolidated returns because the loss taken up on its books was not a taxable loss.

Section 718 (b) (4) of the 1940 Act, which both parties agree is applicable to the situation, provides as follows:

(b) REDUCTION IN EQUITY INVESTED CAPITAL.—The amount by which the equity invested capital for any day' shall be reduced as provided in subsection (a) shall be the sum of the following amounts—

(4) REDUCTION ON ACCOUNT OF LOSS ON TAX-FREE LIQUIDATION.—In the case of the previous receipt of property * * * by the taxpayer in complete liquidation of another corporation under section 112 (b) (6) or the corresponding provision of a prior revenue law, an amount, with respect to each such liquidation, equal to the amount by which the sum of—

> (A) The aggregate of the adjusted basis of each share of stock with respect to which such property was received; such adjusted basis of each share to be determined immediately prior to the receipt of any property in such liquidation with respect to such share, and
>
> (B) The aggregate of the liabilities of such other corporation assumed by the taxpayer in connection with the receipt of such property, of the liabilities (not assumed by the taxpayer) to which such property so received was subject, and of any other consideration (other than the stock with respect to which such property was received) given by the taxpayer for such property so received,

exceeds the aggregate of the amount of the money so received and of the adjusted basis, at the time of receipt, of all property (other than money) so received. The amount of the reduction under this paragraph shall not exceed the accumulated earnings and profits as of the beginning of the taxable year.

The aggregate of the petitioner's adjusted basis of the Tioga stock is the first figure to be determined in applying section 718 (b) (4), which specifies the adjusted basis is to be determined immediately prior to the receipt of any property in the liquidation. It would seem that, at this point, the question is the same as that considered in connection with the 1935 liquidations, petitioner contending that its basis is reduced by the amount of Tioga's operating losses availed of on consolidated return, and respondent contending that such a deduction, though required for income tax purposes, is improper in the computation of accumulated earnings and profits. We have already considered this question at length, and decided that respondent is correct.

That being true, petitioner's basis for the Tioga stock immediately before the liquidation was $1,401,627.44. Since no question of Tioga's indebtedness, assumed by petitioner or otherwise, is present here, the computation consists simply in subtracting from that basis $1,401,-627.44, the aggregate of the amount of money received and the adjusted basis of the property received, as $314,256.34, resulting in a loss of $1,087,371.10, the amount by which petitioner's equity invested capital is properly reduced, according to the mandate of section 718 (b) (4).

Petitioner apparently feels that because the loss which it realized was not recognized for income tax purposes, its invested capital should not reflect the loss. But section 718 (b) (4) specifically requires a reduction on account of loss on tax-free liquidation. It has no other reason for existence. We therefore conclude that respondent did not err in his treatment of this transaction.

### Yuba Manufacturing Co.

Petitioner contends that its surrender of its claims as an unsecured creditor of Yuba, in exchange for common stock of Yuba, was a non-taxable exchange, and that it is entitled to continue to carry in its invested capital account the entire amount of its investment in Yuba.

Respondent contends that the exchange was not tax-free, that a recognized loss, for tax purposes, was realized by petitioner at the time of the exchange; and that, therefore, the petitioner's accumulated earnings and profits must be reduced by the amount of that loss, under section 115 (l) of the code.

Petitioner relies on section 112 (b) (5) of the Revenue Act of 1932 to sustain its claim of nonrecognition of the gain or loss from the exchange. It provides:

No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

The respondent challenges the applicability of this section with the contention that the creditors did not receive stock substantially in proportion to their respective interests in the property prior to the exchange.

The bondholders exchanged $82,000 worth of bonds for 51 percent of the stock, or 56,100 shares of no par common stock, and agreed to have the unpaid bond interest treated as an unsecured claim and to extend the mortgage for 10 years, with the provision for the retirement of the bonds retained on it and payment of future interest. The

unsecured creditors surrendered claims in the face amount of approximately $480,000 in exchange for 49 percent of the stock, or 53,900 shares of no par common stock.

The reorganization was the result of a voluntary agreement worked out by all the creditors, and from that it might safely be assumed that the stock received by each creditor was substantially in proportion to the amount of property surrendered by the creditor in exchange therefor. See Mertens Law of Federal Income Taxation, vol. 3, sec. 20.44.

The only evidence in the record which has any bearing on the question of the value of the unsecured claims so surrendered is the reorganization balance sheet as of May 14, 1932, December 31, 1932, and April 30, 1933. These are the approximate dates on which the bondholders entered into possession of the property, the end of the company's tax year, and of the reorganization.

It shows assets as of April 30, 1933, at the time of the completion of the reorganization, of $472,796.03. Outstanding as a first lien against these assets were bonds in the amount of $382,000, and current interest in the amount of $9,750. The priority of the interest accrued and unpaid as of May 14, 1932, was relinquished by agreement of the bondholders, and that interest assumed the same status as the other unsecured claims. The equity in the assets attributable to the unsecured claims was approximately $81,046. Therefore, the value of the claims surrendered by the unsecured creditors in exchange for 49 percent of the stock was about $81,046. The value of the bonds surrendered in exchange for 51 percent of the stock was $82,000. It seems obvious, therefore, that the amounts of stock received by each transferor were in substantially the same proportion as their respective interests in the property prior to the transfer.

Respondent argues that the transaction is not one to which section 112 (b) (3) of the Revenue Act of 1932 is applicable. Since petitioner does not contend that it is, and since we have already decided it is covered by section 112 (b) (5) and is therefore not taxable, it seems unnecessary to discuss the applicability of section 112 (b) (3).

The existence here of all the other elements required by section 112 (b) (5) has not been questioned by the respondent. The record shows that the transferors were in control of the corporation after the exchange, since they held all of its stock.

It is not clear whether respondent seriously advances the alternative contention, to which some slight reference is made, that petitioner sustained a recognized loss when the creditors of Yuba took effective command of its assets by instituting bankruptcy proceedings. Adjudication of bankruptcy alone is not sufficient to justify a bad debt deduction. See *P. H. Gill & Sons Forge & Machine Works*, 7 B. T. A. 1146.

This seems to be equivalent to an argument that petitioner was

required to take a deduction for the amount of its loss at the time bankruptcy proceedings were instituted. Obviously, as long as there was a reasonable probability that some corporate assets would be available for unsecured creditors, petitioner would not have been allowed to claim a loss in the entire amount of its claim. It might have been able, subject to the Commissioner's discretion, to establish a partial loss under section 23 (j) of the Revenue Act of 1932, but it was certainly not required to do so. Not having done so, we need not consider what its effect would have been on the problem now before us.

We conclude that the transaction involving the exchange by petitioner of its claims against Yuba Manufacturing Co. for common stock of that corporation was one on which no gain or loss was recognized for tax purposes, and petitioner's accumulated earnings and profits are not, therefore affected by it.

Reviewed by the Court.

*Decision will be entered under Rule 50.*