GAGE BROTHERS AND COMPANY, AN ILLINOIS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17273. Promulgated September 30, 1949.

*Richard H. Tyrrell, Esq.*, and *Patrick W. Cotter, Esq.*, for the petitioner.

*H. H. Hart, Esq.*, for the respondent.

476

478

**OPINION.**

OPPER, *Judge*: We are indebted to petitioner's counsel for a summary of the issues, which, as an aid to simplification of both the consideration and the discussion of the complicated questions involved, we quote in full:

In summary, the petitioner's argument presents the following solutions to the court:

1. The petitioner and Old Gage are in fact and under the express language of the Illinois statute, pursuant to which the merger was accomplished in 1936, a single entity and the equity invested capital of the petitioner in the computation of its excess profits tax liability in issue is $402,521.00. If the court so holds, the solutions presented in Párts III, [paragraph 2, *infra*] IV [paragraph 3, *infra*] and V [paragraph 4, *infra*] of the argument need not be considered.

2. If the court holds that the petitioner and Old Gage were not the same taxpayer and that the petitioner acquired its assets in the 1936 transaction, the petitioner maintains that that transaction was a tax-free exchange within

the provisions of Section 112 (b) (5) and that under Section 113 (a) (8) the basis of the property to the petitioner in determining the value of property paid in for stock is the basis thereof to the transferors, to-wit, the Old Gage stockholders and Slocum. If the court so holds, the equity invested capital of the petitioner is $227,644.04.

3. Regardless of the determination of the applicable basis in computing the value under Section 718 (a) (2) of property paid in to the petitioner, there must be included in petitioner's equity invested capital, under Section 718 (a) (7), the sum of $338,311.00 constituting the deficit in earnings and profits of Old Gage. If the court so holds, consideration of Part V of the argument is unnecessary.

4. If the court should reject all of the above solutions advanced by the petitioner and sustain the theory of the Commissioner in using 1936 values, then the court must determine the value of Old Gage good will which was transferred to the petitioner in the 1936 reorganization. The petitioner submits that this value is $250,000.00 and that the equity invested capital allowed by the Commissioner at $68,173.05 should be increased to $318,173.05.

5. The Commissioner erred in disallowing the long-term capital loss sustained by the petitioner upon the receipt in 1942 of a final liquidating dividend on 140 shares of capital stock of Indiana-Illinois Coal Corporation.

We shall deal with the issues in that order.

## I.

Petitioner's contention that it is the same corporation as its predecessor and hence entitled to compute its equity invested capital as though it were itself the old company, requires rejection for a number of reasons.

First, the premise for this approach is confined to the language of the Illinois merger statute. We can not view as decisive the varying provisions of local corporate enactments when applying a Nation-wide system of corporate taxation. See *Burnet* v. *Harmel*, 287 U. S. 103. The very argument made here that the essential continuance of the corporate existence should take no account of inconsequential changes in form is the legislative justification for such ameliorative provisions as sections 112, 718 (a) (2), and 740. See, e. g., *LeTulle* v. *Scofield*, 308 U. S. 415; *Sigmund Neustadt Trust*, 43 B. T. A. 848; affd. (C. C. A., 2d Cir.), 131 Fed. (2d) 528. Section 112 (i) itself expressly includes a "statutory merger" in the description of corporate changes to which it is intended to apply. See also sections 718 (c) (4) and 761 (f). This must mean a merger under a state statute, and hence would either be unnecessary or applicable with varying effects from state to state if petitioner's contention were sound.

Secondly, the parties themselves treated the corporations as different, see *Interstate Transit Lines* v. *Commissioner*, 319 U. S. 590, and for that reason if for no other we should reject the effort to do

otherwise now.  See *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435. The contemporaneous tax returns for the old and new companies show that for income tax purposes they were viewed as predecessor and successor.  It is difficult to see why they should not be similarly treated for excess profits tax purposes, particularly when section 728 provides that "the terms used in this subchapter shall have the same meaning as when used in Chapter 1" and section 729 provides for all chapter 1 (income tax) provisions of law to be applicable to excess profits taxes.[1]

Contrary to petitioner's present statement, these same tax returns indicate that the old company was "dissolved."  It is even to be questioned whether, if a simple continuation of Old Gage had sufficed, the parties would have undertaken the tedious processes of forming the new company, effectuating the merger, dissolving the old company, and then changing the new company's name.  If these steps were necessary or even useful, we should not disregard them now.  *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436.  "* * *  the mere fact that the corporate existence  * * *  was continued is not controlling.  The gain [to a stockholder]  * * *  was represented by shares with essentially different characteristics in an essentially different corporation  * * *."  *United States* v. *Siegel* (C. C. A., 8th Cir.), 52 Fed. (2d) 63; certiorari denied, 284 U. S. 679.

In the third place, we search the applicable provision (section 718) in vain for any suggestion that the equity invested capital of merged corporations is to be computed as though both corporations still exist.  Assuming only one survived, we have no statutory guide as to which was the survivor and which the deceased.  If the old company survived, there was no need for a change of name, which the parties took pains to accomplish.  And if it was the new company, it is manifest its history had only begun.  This consideration suffices to distinguish *Stanton Brewery, Inc.* v. *Commissioner* (C. A., 2d Cir.), 176 Fed. (2d) 573, reversing 11 T. C. 310, which deals with different statutory language and an altogether unrelated legislative device.

But we think the most cogent reason for disallowing petitioner's first claim is the demonstration that the excess profits tax provisions themselves spell out in detail how such a transaction as that now in question should be treated.  Cf. *North Jersey Quarry Co.*, 13 T. C. 194.  Where there are such unmistakable directions by the Federal Legislature as to the effect of a transaction for Federal tax purposes, we need look no further in arriving at the correct result.  *Burnet* v.

---

[1] That is one reason we are unable to agree with the proposition advanced by petitioner that "What may be required by the Federal Government on the matter of filing returns of income during the year of merger has no bearing upon the determination of equity invested capital under section 718 IRC."

*Harmel, supra;* see *Alexander C. Yarnall,* 9 T. C. 616; affirmed per curiam (C. A. 3d Cir.), 170 Fed. (2d) 272. This brings us to petitioner's second contention.

## II.

The only part of this issue in controversy is whether the reorganization of Old Gage constituted a transfer as to which under section 112 (b) (5) no gain or loss would be recognized.[2] We think it clearly did. As was recently held in *Alexander E. Duncan,* 9 T. C. 468, 471: "Section 112 (b) (5) applies where holders of obligations (including notes) of a corporation surrender those obligations in exchange for stock of a new corporation organized to take over and continue the business of the original obligor. *Miller & Paine,*" 42 B. T. A. 586. The *Duncan* opinion continues: "No satisfactory distinction between the present case and those cited * * * *particularly those in which the old stockholders still had some equity,* [e. g., *Miller & Paine, supra*] appears." (Emphasis added.)

And the fact that the transfers here were the result of arm's length dealings between conflicting interests is, on this record, adequate to satisfy us that within the meaning of section 112 (b) (5) the securities received by each were substantially in proportion to his interest in the property prior to the exchange. *Taylor-Wharton Iron & Steel Co.,* 5 T. C. 768; *Montgomery Building Realty Co.,* 7 T. C. 417, 426; *Alexander E. Duncan, supra.*

There is a suggestion that the transaction does not qualify because Old Gage, rather than its stockholders and creditors, was the transferor. Section 112 (b) (3) or 112 (b) (4), where the corporation is the transferor, and section 112 (b) (5) may, to be sure, overlap in their application. See *Helvering* v. *Cement Investors,* 316 U. S. 527. But no part of the transaction would be taxable on that account and the basis of the assets would not be altered by any such tax consequence. Cf. *Richard H. Survaunt,* 5 T. C. 665; affd. (C. C. A., 8th Cir.), 162 Fed. (2d) 753. We do not break up for separate consideration the various phases of a section 112 transaction. *Anheuser-Busch, Inc.,* 40 B. T. A. 1100; affd. (C. C. A., 8th Cir.), 115 Fed. (2d) 662; certiorari denied, 312 U. S. 699. And, in fact, the stock and indebtedness were

---

[2] Section 112 (b) (5), Revenue Act of 1936, reads:
"SEC. 112. RECOGNITION OF GAIN OR LOSS.
    *       *       *       *       *       *       *
"(b) EXCHANGES SOLELY IN KIND.—
    *       *       *       *       *       *       *
"(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

unquestionably transferred to petitioner, which thereby acquired Old Gage's assets. In *Hartford-Empire Co.*, 43 B. T. A. 113, 127; affd. (C. C. A., 2d Cir.), 137 Fed. (2d) 540; certiorari denied, 320 U. S. 787, where stockholders and creditors of a predecessor, Hartford-Fairmont Co., transferred their stock and obligations to the taxpayer (pp. 118, 119) and likewise received its stock, the predecessor being immediately liquidated, respondent analyzed the transaction as petitioner does here: "that the recipients of all of the issued * * * stock of the petitioner were transferors; that they transferred assets to the petitioner for shares of stock of the petitioner; and that such transferors correctly claimed, in 1922, that they had exchanged such assets for shares of stock of the petitioner in tax-free exchanges." This description of the transaction was sustained, section 112 (b) (5) held to be applicable to the original transaction, and section 113 (a) (8) to attribute to the taxpayer the basis of its transferors. We accordingly agree with petitioner that section 112 (b) (5) applies.

It remains to specify the effect of this conclusion upon the amount of petitioner's equity invested capital. Sec. 718 (a) (2) "Property Paid In," provides that "Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange." Relying upon sections 728 and 729 (*supra*), we find that this basis to petitioner is set forth in section 113 (a) (8) as "the same as it would be in the hands of the transferor,"[3] no gain or loss on the original transaction having been recognized under section 112 (b) (5), Revenue Act of 1936. *Helvering* v. *Cement Investors, supra.* That basis, as computed by petitioner, is $227,644.04, which we consider to be the correct figure for equity invested capital under the express provisions of section 718 and those incorporated in it by reference. *Montgomery Building Realty Co., supra.*

### III.

Regardless of the disposition of its second contention, petitioner claims the benefit of section 718 (a) (7), Internal Revenue Code, reading as follows:

---

[3] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) Basis (Unadjusted) of Property.—The basis of property shall be the cost of such property; except that—

* * * * * * *

(8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

(A) by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

(B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

\*      \*      \*      \*      \*      \*      \*

(7) DEFICIT IN EARNINGS AND PROFITS OF ANOTHER CORPORATION.—In the case of a transferee, as defined in subsection (c) (5), an amount, determined under such paragraph, equal to the portion of the deficit in earnings and profits of a transferor attributable to property received previously to such day.

In order to qualify as a "transferee" for this purpose petitioner must hence conform to the language of section 718 (c) (5), which provides:

SEC. 718. EQUITY INVESTED CAPITAL.

\*      \*      \*      \*      \*      \*      \*

(c) RULES FOR APPLICATION OF SUBSECTIONS (A) AND (B).—For the purposes of subsections (a) and (b)—

\*      \*      \*      \*      \*      \*      \*

(5) DEFICIT IN EARNINGS AND PROFITS—EARNINGS AND PROFITS OF TRANSFEROR AND TRANSFEREE.—If a corporation (hereinafter called "transferor") transfers substantially all its property to another corporation formed to acquire such property (hereinafter called "transferee"), if—

(A) the sole consideration for the transfer of such property is the transfer to the transferor or its shareholders of all the stock of all classes (except qualifying shares) of the transferee. (In determining whether the transfer is solely for stock, the assumption by the transferee of a liability of the transferor or the fact that the property acquired is subject to a liability shall be disregarded);

(B) the basis of the property, in the hands of the transferee, for the purposes of this subsection, is determined by reference to the basis of the property in the hands of the transferor;

(C) the transferor is forthwith completely liquidated in pursuance of the plan under which the acquisition of the property is made; and

(D) immediately after the liquidation the shareholders of the transferor own all such stock;

for the purposes of this subchapter, in computing the equity invested capital for any day after the date of the acquisition of the property, the earnings and profits or deficit in earnings and profits of the transferee and the transferor shall be computed as if, immediately before the beginning of the taxable year in which such transfer occurs, the transferee had been in existence and sustained a recognized loss, and the transferor had realized a recognized gain, equal to the portion of the deficit in earnings and profits of the transferor attributable to such property.

Passing the inconsistency of petitioner's assertion that the "transferor" was Old Gage rather than the stockholders, as it maintained under the second issue, and that Old Gage was liquidated after the merger contrary to its statement under the first, it suffices to consider the requirement of section 718 (c) (5) (D), since the characteristics of a "transferee" are stated in the conjunctive and all must be conformed with to fall within the definition.

A considerable portion, in fact a majority, of petitioner's stock was owned immediately after the transfer—as well as after "the liquida-

tion"—by Slocum, which had been a creditor, not a shareholder of Old Gage. Its interest in the property might constitute it a transferor for purposes of section 112 (b) (5), *Helvering* v. *Cement Investors, supra; Alexander E. Duncan, supra;* or even be a proprietary interest under the continuity of interest test of a "reorganization." *Helvering* v. *Alabama Asphaltic Limestone Co.,* 315 U. S. 179. "But," to quote from *Helvering* v. *Southwest Consolidated Corporation,* 315 U. S. 194, 202, "it is one thing to say that the bondholders 'stepped into the shoes of the old stockholders' so as to acquire the proprietary interest in the insolvent company. It is quite another to say that they were the 'stockholders' of the old company within the purview of clause (C)" (of section 112 (g) (1)), which requires that immediately after the transfer the "transferor or its stockholders" or both be in control of the transferee. The opinion continues: "In the latter Congress was describing an existing, specified class of security holders of the transferor corporation .* * *. Indeed clause (C) contemplates that the old corporation or its stockholders, rather than its creditors, shall be in the dominant position of 'control' * * * and not excluded or relegated to a minority position. * * *'"

We have here no problem of control, since subdivision (D) requires that "all" of the transferee's stock be held by shareholders of the transferor. Not only did the Old Gage stockholders not hold "all" of petitioner's stock, they did not even have control, but were clearly "relegated to a minority position." The holding, as well as the quoted language of the *Southwest Consolidated* case so aptly covers the present situation that we must deny petitioner's claim on the strength of it.

The assertion that the purpose, if not the language, of section 718 (a) (7) is applicable to petitioner does not withstand scrutiny. Section 718 (a) (7) was added by section 219, Revenue Act of 1942, adopted on October 21, 1942. The *Southwest Consolidated* case had been decided the 2d of February previous. We can not but assume that language already so authoritatively interpreted was employed by Congress with the same meaning.

This is borne out by the committee reports accompanying the measure. "This amendment incorporates a new section * * * providing that, *under certain very limited circumstances,* the equity invested capital of a 'transferee' corporation which receives property from another corporation pursuant to a tax-free exchange or reorganization shall be increased * * *." H. Rept. 2586, 77th Cong., 2d sess., p. 61 (emphasis added). "* * * The rule increasing the invested capital of a corporation by the deficit of its transferor will apply *only if* * * * (a) the sole consideration for the transfer of such property is the transfer to the transferor or its shareholders of all the stock * * *

and (d) immediately after the liquidation, the stockholders of the transferor own all the stock of the transferee * * *." S. Rept. 1631, 77th Cong., 2d sess., pp. 193–194 (emphasis added). We hence take the view that respondent correctly denied to petitioner the benefits of section 718 (a) (7).

## IV.

Our disposition of the second issue removes the necessity of considering petitioner's fourth contention, relating to the undervaluation of good will, which, as the opening summary makes plain, is no more than an alternative to the first three. We have included in our findings a determination of its minimum value only for its effect upon the existence of potential equities on the part of the stockholders.

## V.

Respondent made no determination of income tax deficiencies against petitioner for either of the years in controversy. We are accordingly without jurisdiction to consider that aspect of petitioner's claim. Respondent's motion to dismiss to this extent must accordingly be granted. *Difco Laboratories, Inc.*, 10 T. C. 660. If the consequence of these proceedings is to create a deficiency in income tax which is subsequently determined, the groundwork for a cognizable petition may then have been laid. We can not anticipate it.

*Decision will be entered under Rule 50.*

