OPINION. Van Fossan, Judge: The question is whether the exchanges effected incident to the 77B reorganization pursuant to which petitioner was revived to take over and continue the business of Delaware, the latter being forthwith dissolved, constituted a tax-free transaction under section 112 (b) (5) of the Revenue Act of 1934,[1] as contended by petitioner. Petitioner was first organized in 1919. It actively engaged in the limestone and cement business until February 1, 1927, on or about which date all of its assets were indirectly transferred to Delaware, which corporation had been formed on January 27, 1927, to continue petitioner’s business. After the transfer, petitioner was not dissolved but remained dormant while Delaware continued operation of petitioner’s former business. In 1932, Delaware, having experienced financial difficulties, defaulted on certain payments due on its bonded indebtedness and thereafter remained in default. The bonds were declared due and payable in 1934, and a foreclosure action was instituted against Delaware by and on behalf of the bondholders. Delaware then filed a petition for reorganization under 77B of the Bankruptcy Act. In the proceedings which followed, a plan of reorganization was conceived and carried on under the guidance of the United States District Court for the Northern District of Ohio, Eastern Division. Pursuant to this plan, petitioner was revived to be the transferee of Delaware’s assets and successor to its business; Delaware’s bondholders and mortgage holders received stock and securities of petitioner in certain amounts in exchange for their evidences of Delaware’s indebtedness; and the holders of Delaware’s class “A” and class “B” stock received agreed-upon allotments of petitioner’s common stock in exchange for their respective shares. It is respondent’s position that the foregoing exchanges failed to come within the scope of the statute relied upon, and that the entire transaction is to be considered as taxable. To qualify as a tax-free exchange under the statute in controversy, compliance must be had with three conditions. First, property must be transferred “* * * solely in exchange for stock or securities * * Second, the transferors of such property must be in control of the corporation immediately after the exchange. For the purposes of this requirement, “control” is defined in section 112 (h) of the 1934 Act as meaning 80 per cent of the voting stock and at least 80 per cent of all other classes of the corporate stock. The third requirement is that the stock and securities received by each transferor must be “ * * * substantially in proportion to his interest in the property prior to the exchange.” See Hartford-Empire Co. v. Commissioner, 137 F. 2d 540, affirming 43 B. T. A. 113. Of the three statutory requisites, there appears to be serious dispute here only as to the third requirement. Petitioner urges that the exchanges in controversy here took place incident to a genuine adversary proceeding wherein the creditors and stockholders of Delaware are to be deemed to have been transferors; that as such they each received stock and securities substantially in proportion to their respective interests in the property prior to the exchange ; and that they were in control of the petitioner immediately after the transfer. To support its contentions, petitioner cites and relies upon such cases as Gage Bros. & Co., 13 T. C. 472; Alexander E. Duncan, 9 T. C. 468; Montgomery Building Realty Co., 7 T. C. 417; Taylor-Wharton Iron & Steel Co., 5 T. C. 768; Miller & Paine, 42 B. T. A. 586, and others of like import wherein the exchanges involved were held by us to be tax free. Respondent maintains that the pertinent evidence of probative value shows Delaware to be insolvent at the time the 77B proceedings were instituted; that, therefore, the equitable interest of the stockholders effectively passed to the creditors upon the institution of such pro-eeedings; and that, since the creditors did not receive all of petitioner’s stock, they did not receive stock or securities substantially in proportion to their respective interests prior to the exchange. In cases of the nature of the one before the District Court, two differing meanings may be connoted by the term “insolvent.” As defined in the Bankruptcy Act, the term means an excess of liabilities over assets at a fair valuation. 11 U. S. C., sec. 1 (10); Collier Bankruptcy Manual, sec. 1.09. An entirely different test of insolvency is the so-called equity test which is merely an inability to pay debts as they become due. Collier Bankruptcy Manual, supra. Thus, if a debtor is unable to meet his obligations as they mature, he is insolvent in the equity sense. He is not insolvent in the bankruptcy sense unless at that time his property at a fair valuation is insufficient to pay his indebtedness. Duncan v. Landis, 106 F. 839. In the instant case, Delaware filed its petition for reorganization under section 77B of the Bankruptcy Act because of its inability to pay its debts as they became due. Hence, it was insolvent in the equity sense. The corporate balance sheet as of the date of the petition shows an excess of assets over liabilities, and that Delaware stock still had a book value in excess of $1,800,000, exclusive of any value to be attributed thereto on account of goodwill or going concern value. It is admitted in this connection that the fixed assets of Delaware, i. e., its plant and real estate, were listed in the balance sheet at approximately $1,600,000 over the fair value thereof. But, even after a write-down of the assets specified by the District Court is made, there still remains some equity of value in the stock. The corporate balance sheet as of June 30, 1935, the day preceding the effective date of the reorganization, after reflecting such write-down in assets value, likewise shows that the corporate stock still possessed some equity of value. Furthermore, the plan of reorganization was submitted to and accepted in writing by a majority of Delaware’s stockholders as is required by statute if the debtor was not found to be insolvent. See 11 U. S. C.f sec. 579. Such acceptance by the stockholders was unnecessary had Delaware been insolvent in the bankruptcy sense. The fact that acceptance of the stockholders was sought and obtained is some indication that Delaware was not insolvent in the bankruptcy sense at the time its petition was filed. Robert Dollar Co., 18 T. C. 444. On this record, after due consideration of all pertinent criteria, we have come to the conclusion that while Delaware was admittedly insolvent in the equity sense when it filed its petition for reorganization, it was not insolvent in the bankruptcy sense at such date. Since the stock shares of Delaware still possessed some equity of value, the holders thereof had an equitable interest which did not pass to the creditors upon initiation of the reorganization proceedings, which interest entitled the stockholders to a proportionate interest in petitioner. Therefore, we disagree with respondent’s contention that the bondholders, in not receiving the entire issue of petitioner’s stock, were, by that fact, denied an interest substantially in proportion to their interest in the property prior to the exchange. Whether the stock and securities of petitioner which were actually received by Delaware bondholders as well as its note creditors and the stock in petitioner that was issued to its stockholders were substantially in proportion to their respective interests in the property prior to the exchange is the next and controlling question. The so-called “full and absolute priority” rule of Northern Pacific Ry. Co. v. Boyd, 228 U. S. 482, and Case v. Los Angeles Lumber Products Co., 308 U. S. 106, applies with equal force to the reorganization of solvent companies as well as those which are insolvent either in the equity sense or the bankruptcy sense. Consolidated Rock Co. v. Du Bois, 312 U. S. 510. Under this rule, the creditors of the company being reorganized must be fully compensated for the entire bundle of rights which they surrender. The bondholders are entitled to have the interest accrued on the bonds which they hold accorded the same priority as the principal thereof. Further, if the bondholders receive securities of an inferior grade — “* * * inferior in the sense that the interest rate has been reduced, a contingent return has been substituted for a fixed one, the maturities have been in part extended and in part eliminated by the substitution of preferred stock * * *”— they have by virtue of having lost their former strategic position lost certain property rights of value, for which they must be made whole. Consolidated Rock Co., supra. In effecting such full compensation, practical adjustments subordinate the use of rigid formulae. Thus, the method to be employed will vary depending upon the peculiar facts, circumstances, and requirements of each case. If the creditors receive securities equal in value to the amount of their respective claims “* * * the formula employed rests in the informed discretion of the court * * under whose guidance the reorganization is effected. See Consolidated Rock Co., supra, in which the Supreme Court further pointed out that: The absolute priority rule does not mean that bondholders cannot be given inferior grades of securities, or even securities of the same grade as are received by junior interests. Requirements of feasibility of reorganization plans frequently necessitate it in the interests of simpler and more conservative capital structures. And standards of fairness permit it. This was recognized in Kansas City Terminal Ry. Co. v. Central Union Trust Co., 271 U. S. 445. This Court there said (p. 455) that though “to the extent of their debts creditors are entitled to priority over stockholders against all the property” of the debtor company, “it does not follow that in every reorganization the securities offered to general creditors must be superior in rank or grade to any which stockholders may obtain. It is not impossible to accord to the creditor his superior rights in other ways.” And the Court went on to say (p. 456), “No offer is fair which does not recognize the prior rights of creditors . . but circumstances may justify an offer of different amounts of the same grade of securities to both creditors and stockholders.” Thus it is plain that while creditors may he given inferior grades of securities, their “superior rights” must be recognized. Clearly, those prior rights are not recognized, in cases where stockholders are participating in the plan, if creditors are given only a face amount of inferior securities equal to the face amount of their claims. They must receive, in addition, compensation for the senior rights which they are to surrender. If they receive less than that full compensatory treatment, some of their property rights will be appropriated for the benefit of stockholders without compensation. That is not permissible. The plan then comes within judicial denunciation because it does not recognize the creditors' “equitable right to be preferred to stockholders against the full value of all property belonging to the debtor corporation.” Kansas City Terminal Ry. Co. v. Central Union Trust Co., supra, p. 454. The face amount of the inferior securities of petitioner, which were issued to Delaware’s bondholders, was substantially equal to the principal of their claims. In addition thereto, for loss of status and for interest accrued on the bonds to January 1, 1935, the bondholders received 64,508 shares, or 46.88 per cent, of petitioner’s common stock. Delaware’s note creditors received 50 per cent of the principal amount of their claims in bonds of petitioner and 50 per cent thereof in petitioner’s preferred stock. In addition, 5.4 per cent of petitioner’s common stock was issued to the note creditors for any loss in status suffered, and for interest accrued to January 1, 1935, on the notes held by them. For the interest accrued on Delaware’s indebtedness, bonded and otherwise, under the plan of reorganization from January 1, 1935, to July 1, 1935, the effective date of the plan, petitioner issued its promissory notes in the amount of $38,685. Moreover, the creditors were given voting control of petitioner, since the common stock issued to bondholders and note holders aggregated 52.5 per cent of petitioner’s common stock. The holders of both types of Delaware’s common stock received in exchange therefor 65,513 shares of petitioner’s common stock, or 47.6 per cent thereof. Those holding Delaware’s class “A” stock were issued, in exchange therefor together with the dividends accrued thereon, 53,018 shares of petitioner’s common stock. To the holders of class “B” Delaware stock, and in exchange therefor, petitioner issued 12,500 shares, or 9 per cent of its common stock. At this juncture, there arises the question as to whether the class “B” shareholders had any equity whatsoever remaining in Delaware so as to warrant their being given a nominal interest in petitioner. Although the foregoing distribution was approved by the District Court as being fair and equitable to all concerned, it does not necessarily follow, as respondent points out, that the stock and securities so received by the respective parties were in substantial proportion to their interests in Delaware. Claridge Apartments Co., 1 T. C. 163, reversed on other issues 323 U. S. 141. Nor does such approval foreclose our inquiry into the value of the assets involved. Robert Dollar Co., supra. Competent, though not conclusive, evidence as to the value of such assets, exclusive of any to be attributed thereto for good will or going concern value, is to be found in the balance sheets set out above. Such evidence has some probative force. Wessel v. United States, 49 F. 2d 137. See also Doyle v. Mitchell Bros. Co., 247 U. S. 179. The District Court, which had all the pertinent facts before it and whose duty it was to find what equities existed and to see that fair and equitable recognition was properly accorded thereto, approved a plan of reorganization which recognized the existence of some equity remaining in the class “B” stockholders. As we have heretofore stated, the finding by the District Court that the amount of recognition so given such stockholders was fair and equitable does not mean that it was necessarily in substantial proportion to their equitable interest in Delaware. Nevertheless, we think that the court’s finding of such equity and its action in granting recognition thereto represents credible evidence as to the existence thereof. Furthermore, the record indicates that the plan so submitted to and approved by the District Court was the result of protracted arm’s-length negotiations between the conflicting economic interests with the referee as moderator. Thus, it appears that persons who were most conversant with the equities involved and the values thereof, after taking all these factors into consideration, determined an allocation of stock and securities that was mutually satisfactory. From this fact it might safely be assumed that the allocation so worked out provided each transferor with an interest in petitioner substantially in proportion to the amount of the property to be surrendered by each in exchange therefor, and that no equities were recognized that did not in fact exist. Taylor-Wharton Iron & Steel Co., supra. See also Mertens, Law of Federal Income Taxation, sec. 20.44. As was said by this Court in Gage Bros. & Co., supra: the fact that the transfers here were the result of arm’s length dealings between conflicting interests is, on this record, adequate to satisfy us that within the meaning of section 112 (b) (5) the securities received by each were substantially in proportion to his interest in the property prior to the exchange. * * * The foregoing is appropriate here. Albeit the evidence is not as complete as an ideal situation would require, the preponderating force of the evidence before us establishes that the 77B negotiations were an arm’s-length transaction between conflicting interests and is sufficient to satisfy us in this case that the securities received by the shareholders were substantially in proportion to their interests in the property prior to the exchange. This being true, we accordingly find that the reorganization was a tax-free reorganization under the pertinent statute. In view of the foregoing, we answer the question posed in the affirmative and hold that the transaction with which we are here concerned constituted an exchange upon which no gain or loss will be recognized under the provisions of section 112 (b) (5), sufra. An appropriate order will be entered. SEC. 112. RECOGNITION OP GAIN OR LOSS. (b) Exchanges Solely in Kind— [[Image here]] (5) Transfer to corporation controlled by transferor. — No gain or loss shall be recognized if property Is transferred to a corporation by one or more persons solely In exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporationbut in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. * * *