468

ALEXANDER E. DUNCAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

TRUST OF FLORA ROSS DUNCAN "WILL", A. E. DUNCAN AND SAFE DEPOSIT & TRUST COMPANY OF BALTIMORE, TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FLORA ROSS DUNCAN TRUST, ELIZABETH DUNCAN YAGGY AND SAFE DEPOSIT & TRUST COMPANY OF BALTIMORE, TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELIZABETH DUNCAN YAGGY TRUST, A. E. DUNCAN AND SAFE DEPOSIT & TRUST COMPANY OF BALTIMORE, TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELIZABETH DUNCAN YAGGY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10951, 10952, 10953, 10954, 10955.
Promulgated September 29, 1947.

*R. Dorsey Watkins, Esq.*, for the petitioners.
*Paul E. Waring, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined deficiencies in income tax for the calendar year 1941, as follows:

| Name | Docket No. | Deficiency |
|---|---|---|
| Alexander E. Duncan | 10951 | $110,071.40 |
| Trust of Flora Ross Duncan "Will" | 10952 | 5,189.05 |
| Flora Ross Duncan Trust | 10953 | 9,205.70 |
| Elizabeth Duncan Yaggy Trust | 10954 | 9,461.53 |
| Elizabeth Duncan Yaggy | 10955 | 11,442.99 |

The petitioners contend that a transaction in which a corporation issued its common stock to them in settlement of $270,000 of judgment claims which the petitioners held against the corporation was within the provisions of section 112 (b) (5) of the Internal Revenue Code, so that no gain or loss to the petitioners can be recognized. They make several alternative contentions. The facts relating to the possible application of section 112 (b) (5) have been stipulated, and the stipulation is adopted as the findings of fact.

The petitioners filed their returns for the calendar year 1941 with the collector of internal revenue for the district of Maryland.

· The May Oil Burner Corporation (hereafter called the corporation) was organized in 1926 under the laws of Maryland. The petitioners were the owners, after December 28, 1938, of promissory notes of the corporation in the principal amount of $250,000. A. E. Duncan loaned the corporation $20,000 on December 13, 1940, and the corporation issued to him its promissory note for the same amount.

The corporation was unable to pay the principal on the notes when it became due. Unsuccessful efforts were made to recapitalize the corporation. An effort was made to put the corporation through bankruptcy, but the petition was dismissed because no arrangement was proposed by the debtors and accepted by the creditors.

· The petitioners thereafter obtained judgment on their notes in the total amount of $270,000.

The noteholders, the holders of more than two-thirds of the outstanding stock of the corporation, and the corporation, entered into an arbitration agreement on April 10, 1941. The petitioners, or some of them, were minority stockholders of the corporation at that time. The arbitrators thoroughly investigated the situation and made a decision, as a result of which the corporation amended its charter, reducing the par value of its stock from $10 to $1 and authorizing the issuance of additional shares of stock. There was but one class of stock. 270,000 shares of stock were issued to the petitioners "in settlement of Two hundred and seventy thousand dollars ($270,000) principal amount of judgment claims recovered against the Corporation in the Superior Court of Baltimore City on March 26, 1941." The shares were issued to the petitioners in direct proportion to the amount of notes owned by each petitioner. There was no change in the other stockholders of the corporation at that time.

The petitioners owned 81.84 per cent of the stock of the corporation immediately after the issuance of the 270,000 shares to them.

The $270,000 notes and the judgments thereon were never worthless, were never determined to be worthless, in whole or in part, and no deduction with respect thereto was ever claimed by any petitioner on any income tax return.

The Commissioner, in determining the deficiencies, held "that the receipt of stock in May Oil Burner Corporation in satisfaction of your judgment against that corporation gave rise to an ordinary taxable gain to the extent that the value of the stock received exceeded the cost basis of the judgment." He added the amount of that difference to the income of each petitioner.

The petitioners contend that the transaction which took place June 19, 1941, whereby they surrendered their judgment claims to the debtor in consideration of the issuance to them of stock of the debtor, was a transaction coming within the provisions of section

112 (b) (5). of the Internal Revenue Code.[1] Section 112 (h) defines control as the ownership of at least 80 per cent of the voting stock and all other stock. The notes and the judgments obtained thereon constituted property in the hands of the petitioners. The only consideration which the petitioners received in the transaction was stock of the corporation, and immediately thereafter they were in control of the corporation. The amount of the stock received by each was exactly in proportion to the interest of each in the property prior to the transaction. The old stockholders did not transfer any property as stockholders but, if it is material, the relationship between their retained interests and those of the noteholders was the result of long negotiation and was in proportion to the value of the existing interests of each. The only remaining difference between the parties on this point is whether the petitioners transferred their property to the corporation in exchange for the stock which they received.

The respondent contends that there was no transfer of property in exchange for stock. He cites cases in which it has been held that no "sale or exchange" takes place when a creditor and a debtor settle the debt between them by the debtor paying the creditor in cash, whether he pays the full amount due or some lesser amount. Perhaps the leading case of that kind is *Hale* v. *Helvering*, 85 Fed. (2d) 819, affirming 32 B. T. A. 356. The question in that case was whether the compromise with the maker of promissory notes for less cash than their face value constituted a "sale or exchange" of capital assets entitling the creditor to a capital loss. The court held that there was no sale or exchange, since "There was no acquisition of property by the debtor, no transfer of property to him." The court pointed out that "property in the notes as capital assets was extinguished, not sold," and it held that the satisfaction of an obligation by partial payment was, as in the case of full payment, not a "sale or exchange" entitling the creditor to a capital loss. See also *John H. Watson, Jr.*, 27 B. T. A. 463; *Commissioner* v. *Spreckles*, 120 Fed. (2d) 517; *Bingham* v. *Commissioner*, 105 Fed. (2d) 971. Those cases have been distinguished in others in which section 112 (b) (5) has been applied. *Miller & Paine*, 42 B. T. A. 586; *Reed* v. *Commissioner*, 129 Fed. (2d) 908, affirming 45 B. T. A. 1130.

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(b) EXCHANGES SOLELY IN KIND.

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. * * *

Section 112 (b) (5) applies where holders of obligations (including notes) of a corporation surrender those obligations in exchange for stock of a new corporation organized to take over and continue the business of the original obligor. *Miller & Paine, supra; Reed v. Commissioner, supra; Rockford Brick & Tile Co.*, 31 B. T. A. 537; *Hartford-Empire Co. v. Commissioner*, 137 Fed. (2d) 540, affirming 43 B. T. A. 113.. Cf. *George P. Skouras*, 45 B. T. A. 1024; *Helvering v. Cement Investors, Inc.*, 316 U. S. 527. It was held in some, or all, of those cases that the surrender of the obligations for cancellation was a transfer in exchange within section 112 (b) (5). Yet, the surrender of such obligations for cancellation does not increase the assets of the new corporation but, as in the present case, merely frees those assets of certain liabilities. The petitioners and the other parties to the arbitration agreement in the present case have accomplished exactly the same thing as was accomplished by the parties involved in the cited cases, except that here the parties used the old corporation, while in those cases the assets of the old corporation were transferred to a new corporation. It was pointed out in the cases cited that the creditors did not receive payment of their debts, but exchanged those debts for a continuing interest in the new corporation and, under such circumstances, the intent of section 112 (b) (5) is to defer the recognition of gain or loss until the continuing interest of the former creditors is finally terminated as, for example, by the disposition of their stock. No satisfactory distinction between the present case and those cited above, particularly those in which the old stockholders still had some equity, appears.

The general application of the principle established by the *Hale* case to cases arising under section 112 (b) would deprive those provisions of much of their intended meaning. Congress had used the word "exchange" several times in section 112 (b). For example, in (2), gain or loss is not to be recognized if common stock in a corporation is exchanged solely for common stock in the same corporation. The Commissioner has recognized in his regulations that this exchange may be directly between a stockholder and the corporation. Regulations 111, sec. 29.112 (b) (2)–1. Also, in (3), Congress provided for nonrecognition of gain or loss if securities in a corporation, a party to a reorganization, are exchanged for stock in such a corporation. Securities include evidence of indebtedness. The Commissioner, in Regulations 111, section 29.112 (g)–2, gives, as an example of a recapitalization coming within the nonrecognition provisions, a case where a corporation, instead of paying off its outstanding bonds in cash, discharges them by issuing stock to the bondholders. There would be no point in giving such an example in the regulations unless the Commissioner regarded it as an exchange within the meaning of

section 112 (b) (3). Although a corporation receives no additonal assets by the surrender to it of its own stock or its own evidences of indebtedness, nevertheless, the courts have applied the nonrecognition provisions and have refused to apply the *Hale* principle in such cases.

It is held that the present transaction came within the provisions of section 112 (b) (5) and no gain is recognized in 1941. This conclusion disposes of the case without consideration of the alternative contentions made by the petitioners and without consideration of additional facts in the record relating to other contentions.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

DISNEY, *J.*, dissenting: I can not agree that the satisfaction of the corporate petitioner's debt by issuance of its stock in settlement thereof was a transfer in exchange within section 112 (b) (5) of the Internal Revenue Code. Such a conclusion is inimical to the more general idea in *Hale* v. *Helvering*, 85 Fed. (2d) 819, that there is no exchange in the compromise of notes for cash less than their face value. It is even more out of line with *Bingham* v. *Commissioner*, 105 Fed. (2d) 971, wherein property was used to discharge indebtedness. That case says, in effect, that it is no ordinary concept to say that there is exchange of debt when it is merely satisfied. Moreover, in *F. T. Bedford*, 2 T. C. 1189, (1197), we considered whether there was an exchange within the meaning of section 112 (b) (3), where a corporation secured the release of its guaranty of another company's stock by issuing its own preferred stock. We said:

* * * The transfer of the new preferred stock of the Terminal Co. for the release of its guaranty of the preferred stock of the Buildings Co. was not an *exchange* within the meaning of section 112 (b) (3). The transfer was merely in payment or compromise of its own obligations. The Terminal Co. received nothing which was property in its possession, but merely succeeded in extinguishing its obligations to the preferred stockholders of the Buildings Co. That being so, such a settlement as the Terminal Co. made did not involve an exchange under section 112 (b) (3) of the Code. * * *

Obviously, the word "exchange" means the same in both section 112 (b) (3) and section 112 (b) (5), so that the case is flat authority here.

Moreover, in *Seiberling Rubber Co.*, 8 T. C. 478, we considered whether within section 112 (b) (5) there was a nontaxable reorganization, where the petitioner, holding unsecured claims as well as stock of a solvent corporation, caused the assets of the debtor corporation to be transferred to a new corporation which issued its capital stock to the petitioner in full settlement of the greater part of the

petitioner's claims. As I understand the opinion, it holds, in effect, that section 112 (b) (5) was not complied with, because in reality there was nothing but transfer from the old corporation to the petitioner. We relied upon *Bunker Hill & Sullivan Mining & Concentrating Co.*, 1 T. C. 1057. Therein we also considered and denied the application of section 112 (b) (5). The facts were, in substance, that a debtor corporation transferred its assets to a new corporation in exchange for stock and then exchanged that stock to its creditors, including the petitioner, who had made advances from time to time in large amounts to the debtor corporation. Petitioner there relied upon *Miller & Paine*, 42 B. T. A. 586, and *Leslie H. Reed*, 45 B. T. A. 1130; affd., 129 Fed. (2d) 908, both of which are relied upon in the majority opinion here.

In my view, there was no exchange within the intendment of section 112 (b) (5), and I would recognize the gain.