TENNESSEE, ALABAMA & GEORGIA RAILWAY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11819.   Promulgated September 30, 1949.

*Claude A. Hope, Esq.*, and *James C. Mulligan, Esq.*, for the petitioner.

*Homer F. Benson, Esq.*, for the respondent.

488

OPINION.

MURDOCK, *Judge*: Section 713 provides for an excess profits credit based upon income and section 714 provides for one based upon invested capital, whereas section 712 (a) provides that the one resulting in the lesser tax for the year in question shall be used. The Commissioner determined the deficiencies by using the credit based upon income. The petitioner contends that one based upon invested capital will result in a lesser tax. The Commissioner denies that it will and a computation must be made to settle the point.

Equity invested capital includes property paid in for stock. Sec. 718 (a). Borrowed invested capital is the equivalent of 50 per cent of borrowed capital as defined in section 719 (a). Sec. 719 (b). The amount of property paid in for stock and of borrowed capital in connection with certain exchanges described in section 750 (a) is determined with reference to sectiton 751. The parties agree upon the amounts to be included in the petitioner's equity invested capital representing money paid in for stock under section 718 (a) (1), accumulated earnings and profits at the beginning of the year under section 718 (a) (4), and the amounts to be included in the petitioner's borrowed invested capital under section 719, if that section is applicable.

Several questions arise relating to the computation of the petitioner's equity invested capital and borrowed invested capital which go to make up the credit based upon invested capital under section 714. The Commissioner contends that the petitioner's equity invested capital based upon property paid in for stock and its borrowed capital must be determined with reference to section 751, and the petitioner disagrees, arguing that sections 718 (a) and 719 control.

This difference between the parties starts with the Commissioner's insistence that the transactions in the latter part of 1937 were all parts of a single integrated plan to transfer the railroad property to the petitioner and terminate the syndicate and Georgia. He then claims that section 751 applies. The petitioner disagrees and contends that

the transfer of the Georgia stock and some other assets to the petitioner by the syndicate for the stock of the petitioner was one exchange (which came within section 112 (b) (5), but not within section 750 (a) because the syndicate was not a corporation) and the transfer of the railroad property to the petitioner and the liquidation of Georgia was a separate transfer within section 112 (b) (6), but not within either section 112 (b) (4) or (5) or so much of section 112 (c), (d), or (e) as refers thereto. Section 751 applies only if there was an exchange within section 750 (a).

The exchanges covered by section 750 (a) do not go beyond those to which section 112 (b) (4) or (5) or so much of section 112 (c), (d), or (e) as refers thereto applies.[1] The Commissioner, in his brief, indicates that he relies upon section 112 (b) (3) and (4) and so much of section 112 (c) and (d) as refers to those sections. Reliance upon section 112 (b) (3), or so much of section 112 (c) as refers to it, will do the Commissioner no good, because section 750 (a) does not mention section 112 (b) (3). He does not indicate anywhere in his brief that he relies upon section 112 (b) (5) or so much of section 112 (c) as refers thereto. He does not quote (5) as a statutory provision involved or make any argument based upon it. The Commissioner mentions section 112 (d) for the reason, apparently, that the petitioner assumed liabilities of Georgia or took property of Georgia subject to liabilities. But section 112 (k) provides that liabilities assumed or property taken subject to liabilities shall not be considered "other property or money" within section 112 (d). Neither party suggests that the rights to subscribe for additional stock of the petitioner might constitute "other property or money." Thus, further discussion of this point may be limited properly to the possible application of section 112 (b) (4).

The argument of the Commissioner based upon section 112 (b) (4) and 112 ((d) is "that the exchange and liquidation were related steps in a single comprehensive plan of corporate reorganization whereby the railroad property was transferred from Georgia to the petitioner in exchange for the latter's entire capital stock and securities (issued in assumption of Georgia's liability on the open accounts), and current liabilities of Georgia outstanding on December 31, 1937."

Section 112 (b) (4) covers a situation where two corporations are parties to a reorganization and provides that the corporation which receives only stock or securities of another in exchange for its property in the reorganization shall not have its gain or loss from the disposition of the property recognized. The railroad property of

---

[1] The parties refer to the code provisions, since the corresponding provisions of the Revenue Act of 1936 which applied to the 1937 transactions are for the present purposes the same.

Georgia was transferred to the petitioner, which had previously issued its stock and securities to the syndicate participants who were at that time the real owners of the Georgia stock. The Commissioner apparently contends that those transactions, taken as a whole, were, in effect, an exchange by Georgia of its railroad property for the stock and securities of the petitioner, which were constructively received by Georgia, although actually issued directly to the real owners of the Georgia stock.

This reasoning ignores certain facts and realities, if the transaction is to be looked at as a whole. Georgia, at the beginning of these transactions, was not in a position to transfer anything of value. Its liabilities exceeded its assets by more than the amount of its capital stock. It was insolvent. Only the syndicate had something of value to transfer. It owned the Georgia stock, but the principal thing of value owned by the syndicate was the indebtedness owed to it by Georgia. The syndicate started off owning that indebtedness and a few other assets and wound up owning the stock and securities of the petitioner. The petitioner started off with its own stock and bonds and at the end owned the railroad property, free of the indebtedness theretofore owed by Georgia to the syndicate, and the other assets of the syndicate. It is obvious that, if such was the transaction, Georgia did not transfer property to the petitioner in exchange for its stock or securities, but, on the contrary, the syndicate alone transferred valuable property to the petitioner in exchange for its stock and securities. Cf. *Seiberling Rubber Co.* v. *Commissioner*, 169 Fed. (2d) 595; *Miller & Paine*, 42 B. T. A. 586; petition for review dismissed, 133 Fed. (2d) 204; *Alexander E. Duncan*, 9 T. C. 468. The syndicate may not be treated as a corporation for tax purposes, *Tennessee, Alabama & Georgia Railway Co.* v. *Hoey*, referred to in the stipulation, and the Commissioner does not argue that it may. Not being a corporation, it could not be "a party to a reorganization" within section 112 (g) (2). Also, section 750 (a) deals with transfers by one corporation to another. Thus, sections 112 (b) (4) and 750 (a) would not apply even though all of the transactions were to be regarded as parts of a single plan. Furthermore, even supposing that the stock and securities of the petitioner were issued for property coming partly from Georgia and partly from the syndicate, nevertheless, section 112 (b) (4) would not apply. That section was intended to apply only to transfers from one corporation to another where both were parties to a reorganization. The definitions of reorganization contained in section 112 (g) (1) are specific and indicate that transfers by noncorporate taxpayers are not being considered. Section 112 (b) (5) was intended to deal with transfers where the transferors were not parties to a reorganization. Since there was no

transfer within section 750 (a), the Commissioner has no justification for applying section 751 (a) and (b) in computing the excess profits credit.

The petitioner's equity invested capital should be computed under section 718 (a) and its borrowed invested capital should be computed under section 719. Since the parties are agreed upon the amount to be included in borrowed invested capital if section 719 applies, only section 718 (a) is left for further consideration. The parties disagree as to the amount of property paid in for stock, section 718 (a) (2). The petitioner contends that the syndicate paid in for the stock and bonds of the petitioner some miscellaneous items and all of the stock of Georgia; the cost to the syndicate of the stock and miscellaneous items was $1,027,000; the basis of those items was the same amount; it is only necessary to determine what part of the total was paid in for the stock; the total should be allocated between the stock and bonds in proportion to the fair market value of each; the total value of stock and bonds was $1,181,050; the total value of the stock issued for the property was $513,500; and, therefore, 513,500/1,181,050 of the total basis of $1,027,000, or $446,527 is to be included in equity invested capital as property previously paid in for stock under section 718 (a) (2). The petitioner offered evidence to show the relative values of the shares and of the bonds, whereas the Commissioner offered none. He, apparently, does not contest the figure of approximately $1,027,000 as a starting point or suggest any other. The allocation of 513,500/1,181,050 of that amount to the stock is justified by the record.

The petitioner next contends that an additional amount should be included in equity invested capital under section 718 (a) (5). That paragraph is entitled "Increase on Account of Gain on Tax-Free Liquidation." It covers a situation where a corporation has received property in complete liquidation of another under section 112 (b) (6), and it provides, in effect, for the increase in equity invested capital by the difference, if any, between the adjusted basis at the time of receipt of the property distributed in liquidation and the adjusted basis of the stock surrendered in connection with the liquidation. The petitioner contends for equity invested capital under that provision in the amount of about $440,000.

Georgia distributed its assets to the petitioner in liquidation, and if that transaction were to be considered separately, perhaps section 718 (a) (5) would apply. However, the Commissioner has contended that all of the various transactions which took place in the latter part of 1937 were related steps and but parts of a single plan. The plan was that the petitioner would have the railroad properties, the syndicate members would surrender their Georgia stock and Georgia indebted-

ness and take the stock and bonds of the petitioner, and the syndicate and Georgia would cease to exist.

The evidence shows the chronology and details of the steps which were taken, but those facts do not prove that the various steps were not all a part of one plan. There is no other evidence to show that they were not all a part of one plan. Furthermore, the reasons and purposes advanced for the various steps rather indicate that all were a part of a single plan. The desirability of and the purposes stated for liquidating Georgia were all known before the first step was taken and some of the purposes stated for the first transfer, that is, the transfer of the Georgia stock by the syndicate to the petitioner, were also well served by the complete elimination of Georgia. Transactions should be looked at as a whole and consideration given to substance rather than to form when the possible application of any of the nonrecognition provisions of section 112 (b) is in question. *George Whittell & Co.*, 34 B. T. A. 1070; *Frank Kell*, 31 B. T. A. 212; *Warner Co.*, 26 B. T. A. 1225; *Prairie Oil & Gas Co.* v. *Motter*, 66 Fed. (2d) 309; *Diescher* v. *Commissioner*, 110 Fed. (2d) 90, affirming 36 B. T. A. 732; certiorari denied, 310 U. S. 650; *United Light & Power Co.*, 38 B. T. A. 477; affd., 105 Fed. (2d) 866; certiorari denied, 308 U. S. 574. The liquidation should not be looked upon, for present purposes, as a separate transaction, but must be considered as a part of the whole. The over-all transaction does not come within section 112 (b) (6), and the petitioner has shown no justification for the application of section 718 (a) (5) and is not entitled to include anything in its invested capital for the taxable years under that provision.

Reviewed by the Court.

*Decision will be entered under Rule 50.*